## No. 15,470.

## HERKIMER ET AL. *v.* McGREGOR, BY NEXT FRIEND.

ADVANCEMENTS.—*Mining Stock Charged to Children.*— *When not Considered as Advancements,*—A. charged certain shares of mining stock which he had purchased against two of his daughters. He also charged them with assessments made on said stock from time to time, and paid by him, and credited them with the amount of a dividend on said stock, received by him and paid by him to them. These shares, together with other shares, were held by the Bank of California for the account and in the name of said A., as trustee, and were never in the actual possession of said A. Subsequently to the charging of said shares against his daughters, the bank upon the written order of A. delivered to one M. all the shares held by said bank for A., as trustee, including the shares charged against his daughters. M. sold all of said shares and

invested the proceeds thereof in other mining stocks. Afterward, upon the order of A., M. borrowed money upon the shares last purchased for the purpose of making, and did make, additional purchases of mining stock. The stocks thus pledged for loans, and those purchased with the borrowed money, were afterwards sold by the pledgees to pay the loans, and nothing was realized over and above the amount of said loans. No shares of stock were ever delivered to either of said daughters, nor did they ever have the possession of or exercise any control over the same, or have anything to do with the disposition of said stock.

*Held,* that the shares of stock so charged against said daughters could not, in the settlement of the father's estate, be considered as an advancement to them.

PRACTICE.—*Motion for a New Trial — When May be Filed.—Finding of Facts.* —It is proper to make and file a motion for a new trial immediately after the verdict of the jury is returned, or the finding of facts announced by the court.

From the Vigo Superior Court.

*J. G. Williams, F. Winter* and *J. B. Elam,* for appellants. *R. H. Catlin, S. B. Davis* and *I. N. Pierce,* for appellee.

ΘLDS, J.—This is a suit for partition brought in the Vigo Superior Court. Alexander A. McGregor, being an infant, sued by his next friend, and Helen Herkimer, Mary McKeen and James McGregor were made defendants. The real estate of which partition was sought belonged to Alexander McGregor in his lifetime. The parties to the partition suit were his children. The plaintiff was his only child by a second marriage, and the three defendants were children by his first marriage. The question presented relates to advancements alleged to have been made by the father, in his lifetime, to the three defendants. As to the defendant James McGregor, it is agreed that advancements had been made to him exceeding any possible interest he could have in the real estate. This fact was agreed upon and was the basis of a special finding by the court to the effect that James McGregor had no interest in the real estate in controversy, and James McGregor took no exceptions and prosecutes no appeal.

Helen Herkimer and Mary McKeen save exceptions and appeal and assign errors.

The controversy in the case is confined to a dispute as to whether or not these appellants are chargeable as an advancement with certain mining stocks, or the money invested in such mining stocks, and the title taken in the name of their father, Alexander McGregor, as trustee, and charged to these appellants on his books, which shares of stock the court, in its special findings of fact, finds were purchased by the father in pursuance of his intention to purchase fifty shares of stock for each of said appellants as and by way of an advancement and their agreement thereto, and that he caused said shares to be placed in his name, as trustee, for the benefit of said defendants, and charges the same to them as advancements.

There are numerous exceptions and assignments of error by the appellant, all relating to and seeking to present the same question.

It is contended by counsel for the appellee that no question is properly presented, but there was a special finding of facts and conclusions of law by the court, and exceptions to the conclusions of law by the appellants. The appellants, at the proper time, also made a motion for a new trial, by which they question the sufficiency of the evidence to support the finding of the court. By the motion for a new trial they, at least, present the question as to whether or not there is any evidence to support the finding in regard to such advancement. That the question is presented in this manner there can be no doubt; hence it is unnecessary to determine as to whether it is presented in any other way.

Mrs. Orinthia A. McGregor, widow of Alexander McGregor and mother of the appellee, testified as a witness, and from her testimony the court may have very properly found that in the fall of 1872 it was agreed by and between the deceased, Alexander McGregor, and his two daughters, the appellants, that the father agreed to purchase for each of his daughters

fifty shares of Raymond and Ely mining stock as and by way of an advancement for each of them, and that they agreed to accept such stock as an advancement to them, and that it was agreed that he was to manage the stock; and that afterwards, in the year 1873, he paid to each of them one hundred and sixty-seven dollars as a dividend on the stock. But the material question to be determined is as to whether or not he did purchase, and place under their control, such stock in such a way that they received the benefit of it, and so as to constitute an advancement to them, and be chargeable against them as such, and this must be determined from an agreed statement of facts made by the parties to the suit, which constituted all the evidence from which the court could base a finding that such advancement was made to them, and charge the same against them. It was agreed that " on the 15th day of January, 1873, the said Alexander McGregor caused to be purchased fifty shares of stock in a certain western mining company, known as the Raymond and Ely stock, and on the 19th day of February, 1873, caused to be purchased one hundred and fifty shares more of this same stock; and on the 14th day of March, 1873, seventy-five shares more of this same stock, being a total of two hundred and seventy-five shares."

In February, 1873, one James C. McGregor, nephew of said Alexander McGregor, purchased two hundred and twenty-five shares of Raymond and Ely stock. All of these purchases were made through one John C. Ball, then residing in Salt Lake City, Utah, and all of the five hundred shares above mentioned were held by the Bank of California, in the city of San Francisco, California, in the name and for the account of said John C. Ball, until the 9th day of July, 1873, when, upon the order of said Ball, they were transferred and held thereafter by said bank for the account and in the name of Alexander McGregor, trustee; on June 26th, 1874, the Bank of California, upon the order of said Alexander McGregor, transferred two hundred and fifty of the

shares to said James C. McGregor, and continued to hold the remaining two hundred and fifty shares for the account and in the name of said Alexander McGregor, trustee. On the 18th day of March, 1875, the said Alexander McGregor, through said Bank of California, purchased fifty more shares of said Raymond and Ely stock, and again, on the 23d of March, 1875, purchased one hundred more shares of said stock, making a total of four hundred shares held at that date by said Bank of California for the account and in the name of said Alexander McGregor, trustee, and these four hundred shares said bank continued to hold as aforesaid until April 1st, 1875, when, pursuant to the written order of said Alexander McGregor, trustee, the said bank delivered said four hundred shares to one Alexander McGregor, junior. During the months of April and May, 1875, pursuant to the written order of said Alexander McGregor, Alexander, junior, sold the said four hundred shares, and invested the proceeds thereof in other mining stocks, known as Comstocks. These Comstocks were held by said Alexander McGregor, junior, for a time, and then, again acting upon the orders of said Alexander McGregor, he borrowed money upon them for the purpose of making, and did make, additional purchases of mining stock. A panic coming on the stocks thus pledged for loans, and those purchased with the borrowed money, were sold by the pledgees to pay the loans, and nothing was ever realized over and above the amount of said loans. The fifty shares of stock purchased as above stated, on the 15th day of January, 1873, the said Alexander McGregor charged upon the general book of accounts kept by him with all the persons with whom he had dealings, opening an account as designated with Raymond and Ely, and charging the amount paid for stock and assessments, and crediting them with amount received in premiums and dividends, and including and showing that one-half of fifty shares belonged to James C. McGregor, in January, 1873. In said account-book there appears an account with Helen Herkimer where she

is charged on February 25th, 1873, to cash paid for fifty shares R. & Ely stock, $4,328.77, and in March, 1884, to cash paid delinquent tax, city lot, $38, and she is given credit October 7th, 1873, by R. & E. dividend for August, $164.76.   There is also an account with Mary McGregor, now Mary McKeen, by which she is charged on February 25th, 1873, to cash paid for fifty shares R. & Ely stock, $4,328.77; October 14th, 1874, to cash paid assessments, $3 per share, $166.65; December 8th, to cash paid assessments, $3 per share, $166.13; April 7th, 1875, to cash paid assessments, $3 per share, $176; May 10th, to cash paid assessments, $5 per share, $283.13, and she is given credit on October 7th, 1873, by R. & E. dividend for August, $164.76. This account is included in the agreed statement of facts, and it is also agreed that " the fifty shares of stock which appear charged in said book to appellant Mary McKeen, and the fifty shares charged, as shown by the same book, to appellant Helen Herkimer, constituted a part of one hundred and fifty shares purchased by him as aforesaid, on the 19th day of February, 1873, and the remaining fifty shares of said lot of one hundred and fifty shares was charged by him on said book to Jacob D. Herkimer, husband of appellant Helen Herkimer.   Out of the one hundred and fifty shares purchased by him as aforesaid, on March 18th and March 23d, 1875, the said Alexander McGregor charged upon his said book fifty shares to said Jacob D. Herkimer, and the remaining one hundred shares, together with the seventy-five shares purchased by him as aforesaid, March 14th, 1875, appear in the account hereinbefore set forth, with twenty-five shares purchased by him, January 15th, 1873, as aforesaid.   None of said Raymond and Ely shares, hereinbefore referred to, were ever in the actual possession of said Alexander McGregor, and no shares of stock were ever delivered by him to either appellant Mary McKeen or appellant Helen Herkimer.

" The items for assessment paid on stocks appearing in the

account aforesaid, with defendant Mary McKeen, were assessments paid by said Alexander McGregor upon the fifty shares of Raymond and Ely stock specified in said account. The item of dividend credited in said account was a dividend collected by him, as was also the dividend credited in the account aforesaid of Helen Herkimer. This last named dividend being received from the fifty shares of Raymond and Ely stock specified in said Helen Herkimer's account. The dividends upon all the said stock held for the account of said Alexander McGregor, trustee, by said bank of California, were collected by him, and the dividends upon the fifty shares each of the stock charged as aforesaid to Helen Herkimer and Mary McKeen, were paid by said McGregor to them respectively, and these dividends were the only money ever paid to said appellants, or either of them, on account of said Raymond and Ely stock. Assessments identical in number and amount with those paid as aforesaid upon the shares of stock charged to said Mary McKeen, were also paid by said Alexander McGregor on the fifty shares appearing in the account of Helen Herkimer, but they were charged to Jacob D. Herkimer, husband of Helen, and appear in the account kept with him in said general account book."

Scott Intestate Law (2d ed.), at p. 543, says: "An advancement is an irrevocable gift by a parent, who afterwards dies intestate, of the whole or a part of what it is supposed the child will be entitled to on the death of the party making the advancement."

The gift, in order to constitute an advancement must be irrevocable. 2 Woerner American Law of Administration, p. 1214.

In the same volume, p. 1220, in speaking of advancements, it is said: "Hence, when made by deed with warranty, the donee may recover against the estate for a breach thereof if encumbered by mortgage."

Advancements are based upon the theory that a parent is presumed to intend that all his children shall share equally

in his estate, not only in what may remain at his death, but equally in all that came from him, and the doctrine of advancement is invoked to effectuate equality in the distribution of his estate. The donee in such case, in order to share in the remainder of the estate, is required to bring what he has received into hotchpot. He is not necessarily required to return the property or thing received, but must submit to having its value charged against him. Woerner American Law of Administration, pp. 1213 and 1214.

The very idea or gist of an advancement contemplates that the heir received something of value from the ancestor, and has retained it, and can bring it into hotchpot and have its value recovered against him in the distribution. If the gift was irrevocable, and the parent parted with and the heir received and retained the property or thing given, although he may have disposed of or squandered or destroyed the same, it is nevertheless an advancement. But if the property given was real estate, conveyed by father to son by deed of warranty, given and accepted as an advancement, and there is a breach of the warranty, the son can recover on such breach, the son contributing his share towards satisfying it.

Adjusting advancements between heirs is adopted to arrive at an equitable adjustment and division of the father's estate, and the rule allowing an action by the son for breach of a warranty in a deed conveying an advancement to a son, and requiring him to contribute his share to satisfy the breach, operates to charge the son with only the amount actually received or benefit derived by the advancement. From a parity of reasoning it must necessarily follow that, if the father give to the son money or personal property as an advancement, and the gift is complete and irrevocable, and the father afterwards, having it in his possession, or taking possession of such property or thing given, converts it to his own use or disposes of it in such a way as to deprive the son of the benefit of the thing given, the son might re-

cover the value of the gift, or he might rest until its value was sought to be charged against him as an advancement, and then show that while he had received the gift from his father, the father in his lifetime had taken the thing given and converted it to his own use, and deprived the son of it, and that by the act of the father who gave it he was deprived of it again, and placed in a position where he could not bring the thing given into hotchpot, and as the father had again taken to himself the thing given and received, the benefit of it, and it had gone into his estate, it should not be charged against him ; or, in case the father had given to the son a horse of the value of and as an advancement for one hundred dollars, the price being agreed upon between the father and son, and it was agreed between them that it was to be an advancement, and the horse was delivered and title passed, but prior to the delivery the father had executed a chattel mortgage on the horse without the son's knowledge, to secure a debt of more than the value of the horse, and the father fails to pay the debt and satisfy the mortgage, and the horse is taken from the son in satisfaction of the mortgage—in such case the gift was complete. The title to the horse passed from father to the son as an advancement, but by the act of the father, and his failure to pay the mort-. gage debt, the son was deprived of any benefit from such gift. Manifestly, after the father's death, the value of the horse could not be charged against the son as an advancement.

As stated by Woerner : " The doctrine of advancements is invoked to effectuate equality in the distribution of estates." To charge a child with an advancement it must be shown that he received something from the parent and was allowed to retain it. If there was a gift made as an advancement and afterwards by agreement between the parent and child it was rescinded in whole or in part and the parent took all or a part back, or if the parent without the consent of the child took the thing given unto himself again and deprived

the child of the benefit of it, it would be manifestly unjust to charge the child with the value of that which was again taken and used by the parent, and of which the child was deprived by the parent. The parent after having made a gift by way of an advancement can change it so as not to have it charged as an advancement, provided such change be made to satisfactorily appear. Whether a gift or conveyance is to be regarded as an advancement or not is to be determined by the intention of the donor. An advancement can not be charged against a child unless it appear that it was so intended by the donor. And under the rules governing the charging of advancements against heirs, it would seem to be entirely inconsistent to charge an advancement of property, although once given to a child to be so treated, but which was afterwards and during the lifetime of the donor taken by him from the donee and the donee deprived of it. Such a disposition of the property by the donor as deprived the donee of it, and by which the donor converted it to his own use, must certainly be regarded as conclusive evidence of a revocation of the advancement and of the donor's intention to have it charged against the heir as such, and that the donor had changed his mind after making the gift, and, having the power to do so, had taken the property from the donee. *Joyce* v. *Hamilton*, 111 Ind. 163. To charge the heir with the value of property under such circumstances would invoke the doctrine of advancements to make an unequal distribution of the estate of the ancestor instead of an equal distribution which is its object and purpose.

In the case at bar the property never came into the possession or under the control of the appellants, or either of them. The father retained the control of the shares of stock; he had it transferred, together with other shares of stock, to himself, as Alexander McGregor, trustee. The fifty shares of stock which is sought to be charged against each of the appellants, were held by him in no different capacity from the

other shares of stock owned by him; they were all transferred together in the same way. He charged the stock to them on his account books, not as an advancement, but did not designate, anywhere in writing, that the stock was to be treated as an advancement. After having the bank hold all his stock to his credit as trustee for some months, he then transferred it all to Alexander McGregor, junior, and this was done without any directions from, or agreement with, the appellants, or either of them; afterwards Alexander McGregor, junior, by the directions of Alexander McGregor, sold all the Raymond & Ely stock, and invested the proceeds thereof in other mining stock, known as the Comstocks. Afterwards Alexander, junior, by order of Alexander McGregor, borrowed money on the Comstocks stock and made additional purchases of stock. Then a panic came and all was lost.

While Alexander McGregor charged fifty shares of Raymond & Ely stock to each of his daughters on his account book, and charged them with assessments paid, and credited them with one dividend received, he made no account of the sale of the stock, or of the purchase of the Comstocks stock, or of the borrowing of money upon that stock in his account with either of the appellants.

While the testimony of Mrs. McGregor, and the agreed statement of facts, might afford some evidence for the court to base its finding that Alexander McGregor at one time intended to purchase fifty shares of Raymond & Ely stock each for the appellants, and did, in fact, intend them to have the same, and that they should own fifty shares each of the stock purchased by him, yet the facts show conclusively (and there is no evidence to the contrary) that he retained the sole control and management of the stock, and afterwards, without any authority from them, or either of them, transferred it to Alexander, junior, to hold, subject to his orders, and afterwards ordered him to sell all of the stock and invest the proceeds in other stocks, which stocks last purchased

Alexander, junior, purchased, and held subject to the order of Alexander McGregor as and for his stock, and by his order Alexander, junior, borrowed money on these stocks, and purchased more stock. The evidence all goes to show that Alexander McGregor purchased and owned the Comstock stocks. The uncontroverted facts agreed upon show and prove that Alexander McGregor, the father of the appellants, changed his mind in regard to allowing his daughters to have any of the Raymond and Ely stock, and that he sold all of such stocks and purchased other stocks for himself; that he converted the stocks he intended for them to his own use and deprived them of the benefit of them.

The evidence does not show an irrevocable gift by Alexander McGregor to the appellants of the stock, or any of it to either of them, but the uncontroverted evidence shows that he did not make an irrevocable gift of the stock to them, but on the contrary retained control of the stock and revoked the gift, and there is no evidence to support the finding that the appellants are chargeable with said Raymond and Ely stocks or their value as an advancement. It would clearly be inequitable and manifestly unjust to charge an heir with property as an advancement when the ancestor kept the control of the property and sold and converted the proceeds to his own use and deprived the heir of any benefit from it, although the father had at one time prior to the sale and conversion by him intended to give it to the heir as an advancement.

It would be in direct opposition to the well settled doctrine that the advancement is to be determined by the intention of the donor, for how could it be said that an ancestor intended the heir to be charged with the value of property which he had himself taken from the heir and deprived the heir of the benefit of such property? The adjudication as to advancements is executing and carrying out the will and intention of the ancestor in case of a gift. Certainly, the father did not intend his child to be charged

Herkimer *et al. v.* McGregor, by Next Friend.

with the value of stocks retained and sold and the proceeds used by himself in the purchase of other stocks in his own name.

The court also erred in its conclusions of law in this case. The facts found do not sustain the conclusions of law. The question involved is more properly presented in this case by the exceptions to the conclusions of law, but this exception was not taken until after a motion for a new trial was made and overruled, and we think the question is properly presented by the motion for a new trial, and that there is no evidence to support the finding, and the court should have sustained the motion for a new trial.

Judgment reversed, at costs of appellee, with instructions to the court below to sustain appellants' motion for a new trial.

Filed Sept. 25, 1890.

## On Petition for a Rehearing.

OLDS, C. J.—We fully considered the questions presented by the record in this case, and, as stated in the opinion, reversed it for the error of the court in overruling the motion of the appellant for a new trial. In doing so we fully considered all the evidence in the case. In concluding the opinion we in effect said that the question would have been more properly presented by exceptions to the conclusions of law, but that the exceptions were not taken at the proper time, and hence we did not make any ruling as to that particular error.

The suggestion as to the exceptions to the conclusions of law was made for the reason that we were convinced the court also erred in its conclusion of law, though no question was properly presented, and therefore we could not reverse the judgment with instructions to re-state the conclusions of law.

Counsel for appellee, in their brief on petition for a rehearing, earnestly insist that there is no question presented by

the motion for a new trial, for the reason, as we interpret their brief, that the motion for a new trial was prematurely filed, but with this theory we can not agree.   The cause was submitted to the court for trial, and on proper request the court made a special finding of facts.   After the announcement of the finding of facts appellant filed a motion for a new trial, which was overruled.   Exceptions were then taken to the conclusions of law, and thereupon the court appointed commissioners to make partition.   Afterwards the commissioners reported.   Appellants excepted to their report, and then the court rendered final judgment of partition, and apportioned the costs, and from this judgment appellants appeal.

The appeal was taken from the final judgment in the case, and the motion for a new trial was made and filed at the proper time, and exceptions reserved to the overruling of it. This is held to be the proper practice in the case of *Jones* v. *Jones,* 91 Ind. 72.

Under our statute a motion for a new trial may be made either before or after judgment, provided it be made and filed at the term at which the verdict or decision is rendered; or if the verdict or decision be rendered on the last day of a term, then upon the first day of the next term.

In *Jones* v. *Jones, supra,* it is held that the word " decision," as used in section 561, R. S. 1881, means " finding." Prior to the code a motion for a new trial could not be made after judgment.   1 Works Practice, section 868 ; *Smith* v. *Thornburgh,* 7 Ind. 144 ; *Quinn* v. *State,* 123 Ind. 59 ; *Emison* v. *Shepard,* 121 Ind. 184; *Colchen* v. *Ninde,* 120 Ind. 88 ; *Ikerd* v. *Beavers,* 106 Ind. 483.

It is unquestionably proper practice to make and file the motion for a new trial immediately after the verdict of the jury is returned or the finding of facts announced by the court.

We omitted any discussion in the original opinion of the technical objections made to considering the main question

discussed, for the reason that it was clear that the sufficiency of the evidence to sustain the finding was presented by the motion for a new trial, and upon that question the judgment must be reversed, and no good purpose would be subserved by discussing the other alleged errors.

The petition for rehearing is overruled.

