## LESTER *v.* HINKLE.

[No. 12,507.  Filed June 3, 1926.  Rehearing denied November 24, 1926.  Transfer denied October 31, 1929.]

194

*Henry M. Dowling,* for appellant.

*Charles E. Henderson* and *Laurens E. Henderson,* for appellee.

NICHOLS, J.—Action for an accounting by appellee against appellant, and to recover commissions claimed to be due appellee under a secret agreement entered into between appellee and appellant, whereby appellee, at his option, was to render services to appellant in the sale of certain oil stocks. This is the second appeal of this case, the first being to the Supreme Court. See *Lester* v. *Hinkle* (1923), 193 Ind. 605, 141 N. E. 463.

The several errors relied upon for reversal are: The court's action in overruling appellant's demurrer to the second paragraph of amended complaint; in overruling appellant's motion for a new trial; and in its conclusion of law.

It appears by the special findings of facts that, during the years 1916, 1917 and 1918, appellant was engaged in selling both the common and preferred capital stock of the Standard Royalties Company. On April 19, 1916, appellee and appellant entered into a contract, by the terms of which, appellee was appointed confidential representative of appellant for the counties of Knox and Sullivan, Indiana, and was to receive, for information, so long as he might be able and did or was willing to render same to appellant, five per cent of all future sales on the preferred and common capital stock of said company, when received in cash by appellant from said territory. A full statement of sales and check to balance was to be mailed appellee on the first working day

of each month on sales paid for during the previous month. Appellant agreed not to divulge the compensation to any one and so doing canceled the agreement.

Appellee was well acquainted in said counties and performed services under said contract, which was never canceled, for appellant during said time, in that, at the direction of appellant, in April, 1916, and, after the execution of the contract, he went to Oklahoma, where were located oil wells and properties of said company, for the purpose of investigating its properties and to inform himself as to the nature, conditions and extent thereof, and to form an estimate of the value thereof and of the value of its stock then being sold by appellant, and spent about 10 days thereat, and then went into the affairs of the company, its properties, its books, and formed a conclusion as to the nature, condition and extent of said company's properties, and the worth of said stocks. Appellant, through his agents, sold such stocks in said two counties during said years, and, in so doing, and in aid thereof, did, at different times, come to appellee for aid therein by making inquiries of and advising with appellee concerning who would be good prospects to buy said stocks, who would be financially able to pay for said stocks when sold to them, and, in the event notes were given as purchase money for stocks, whether the notes were collectible, and in each and every instance, he gave him his best judgment thereon, and appellant acted upon said judgment so given, and made sales of said stocks in said two counties. Appellee gave names of responsible prospective purchasers to said agents at divers times, to some of whom were sold such stock by such agents, and described the company's properties to prospective purchasers when they were sent to him, and generally gave such information as he could when called upon. Appellant, by his said agents, sold in said counties 14,799 shares of the par value of

$100 each during said years to divers persons, and the purchasers thereof paid $147,990, indicating a sales price of $10 per share, and each purchaser received his respective certificates of stock representing his purchase, all prior to the bringing of his suit. Five per cent commission on said stock so sold is $7,399.50.

Prior to the bringing of this suit, appellee duly made demand of appellant for an accounting and payment of the amount due on said contract and for the commissions due him on all said stocks sold, which appellant failed and refused to do.

During the time appellant was engaged in selling said stocks, he sold stocks to divers persons in said counties, concerning the sale of which, appellee was at no time consulted or any inquiries made of him, and appellee never knew until after the bringing of this suit of any such sales, but appellant paid appellee on some of the stock so sold five per cent commission under said contract at different times during the years 1916 and 1917.

Appellant paid appellee in cash, during the years 1916 and 1917, on some of such sales $630, and acknowledged, on April 16, 1917, that there was an unpaid balance of $150 credited to his account, and other liability on stocks not paid for, on which he would pay the commission when paid for by the purchaser.

Appellant rendered to appellee written statements of account from time to time between September 19, 1916, and February 19, 1917, purporting to show, under appropriate columns, the items of credit to which appellee was entitled under said agreement, and items of debit with which he was charged, together with a check for the balance purporting therein to be due him, but said written statements did not contain complete showings of all sales of stock in said counties made by appellee during the times purporting to be covered by them

respectively, of which fact appellee was unaware, and did not ascertain the same until shortly before filing this suit.

Appellee is entitled to recover interest of and from appellant on the balance due under said contract of $6,769,50 at the rate of 6 per cent from the date of the filing of the complaint herein, July 22, 1918.

Upon these facts found, the court announced as a conclusion of law that the law is with appellee, and that he is entitled to recover from appellant, in principal and interest, $9,511.02 for which judgment was rendered.

It will be observed that the special findings of fact, the substance of which is set out above, are in harmony with the first paragraph of amended complaint, the substance of which is set out in the opinion on the former appeal. *Lester* v. *Hinkle, supra.* On that appeal, the Supreme Court held that the first paragraph of amended complaint was good as against demurrer. With the first paragraph in the record at the time of the second trial, there was a good paragraph upon which the special finding rested, regardless of whether the second paragraph was good or bad. We hold, however, that the second paragraph of complaint, which is substantially the same as the first, is good as against appellant's demurrer, but, even if such paragraph were not good against demurrer, appellant is not harmed by the court's action in overruling a demurrer thereto.

As stated above, the Supreme Court has held that the first paragraph of complaint is good against appellant's demurrer. Right or wrong, such ruling of the Supreme Court constitutes the law of this case as to the question ruled upon. There being, then, a good paragraph of complaint in the record, appellant's motion in arrest of judgment was properly overruled, for, unless all paragraphs of the complaint

are bad, such a motion is without force. 2 Watson's Revision Works' Practice §1911.

Contending that his motion for a new trial should have been sustained, appellant says that the evidence was insufficient to sustain the finding of the court, in that, it wholly failed to show any personal liability on the part of appellant to appellee under the contract sued upon, but, on the contrary, established that appellant, in entering into said agreement, acted only as the disclosed fiscal agent of the Standard Royalties Company, and that appellee's remedy, therefore, if any, was against such company and not against appellant as its agent. It is to be observed, however, that the contract in form was the contract of appellant executed by him as an individual and not as the agent of the company. Added to this fact is the evidence of Minnie Solomon, who was associated with appellant in the years 1916 and 1917 as his secretary, that appellant bought the stocks which he sold in blocks, and that the certificates were his before she made them out for him. It further appears by her evidence that some of this stock was sold for cash, some on notes, and some was traded in for stock in other companies. From such evidence, the court might reasonably conclude, as it did, that the contract between appellant and appellee was the individual contract of appellant for the sale of stock that was his own, and that it was being negotiated by him as an individual and not as the agent of the oil company.

Appellant next says that there was no proof that appellee performed any service under the contract in suit, but we do not so understand. It is clearly the theory of the amended complaint that appellee was, by the contract with appellant, employed to furnish confidential information to be used by appellant in the sale of the stocks, and that such information

was given to appellant and his agents, and accepted and used by them in the sale of stock. It is to be observed that, by the terms of the contract, appellee was to receive commission not alone upon the stock sold to persons who conferred with him, but upon all future sales of such stock in Knox and Sullivan counties. That appellant so understood the contract is evidenced by the fact that commissions were paid to appellee upon sales of stock in said counties which sales were not known to appellee until he received his commission therefor. We hold that the evidence is sufficient to show that appellee performed the services required under the contract, as interpreted by the parties thereto themselves, and that the contract itself, together with the evidence of the amount of stock sold and cash received therefor in the two counties, to wit, $147,990, fixed the value of such services.

Appellant complains that the court erred in allowing appellee to testify to conversations between himself and the salesmen of the stock in the two counties, appellant's contention being that the evidence fails to show that such salesmen were the representatives of appellant in his individual capacity. But, as stated above, it appears by the evidence that the stock negotiated by these salesmen was first purchased by appellant in blocks, and that the certificates before being filled out were his; the agents were furnished with a copy of a letter prepared by appellee for appellant; they discounted the notes with the bank; and certificates of deposit for the proceeds thereof were made out to appellant, who sent them to the bank through the clearing house. From such evidence, and in the absence of evidence to the contrary, the court might reasonably conclude that these salesmen were the agents of appellant. There was no error in permitting appellee to

testify to conversations with such salesmen concerning their prospective sales of the stock involved.

Appellee was requested to refer to the records of the oil company, of which he was, at the time of testifying, president, to tell the court the names of the stockholders and the number of shares that were shown by the record to be sold in the two counties. Appellant objected to this evidence, on the ground that the witness did not make the record, that the party who did was not in court for cross-examination, that the evidence was hearsay, and that the statutes of Indiana provide the method by which corporate records may be certified. The objection was overruled, and appellee gave the list of such stockholders, 35 of them, and the holdings of each. The method of keeping the records used by the oil company was the card-index system, there being no other record kept by the company of the stock transactions, or list of the stockholders. The cards were present in court, and referred to by appellee as he gave his testimony. So far as we can discover, there was no dispute as to the names of these stockholders and their holdings. The cards, as the records of the corporation, were competent evidence, but, to have them in evidence, would have required the introduction of 35 cards. The rule that should control under such circumstances is thus stated in *Cleveland, etc., R. Co.* v. *Woodbury Glass Co.* (1918), 80 Ind. App. 298, 120 N. E. 426: "It is well settled that where books, records, and papers, which might properly be used in evidence, are numerous or voluminous, it is competent for any qualified person who has examined them to testify as to the result of such examination with regard to the subject under examination." We hold that it was not error for the court to permit appellee to testify as to the names and holdings of the stockholders who had purchased stock in the two counties,

referring to the cards, as he did, for his information.

Appellant has properly assigned as a reason for a new trial that the assessment of the amount of recovery is erroneous, being too large, but he has waived this assignment as a ground of new trial by failing to discuss it in his points and authorities. Under his point VII, he says that "the court erred in refusing to grant a new trial on the ground that there was error in the assessment of damages, the same being too large." There is no such reason for a new trial given in appellant's motion therefor, and, if there were, it could not be considered, for the reason that "excessive damages" is cause for a new trial in cases of tort only. *Lake Erie, etc., R. Co.* v. *Acres* (1886), 108 Ind. 548, 9 N. E. 453; *Federal Life Ins., etc., Co.* v. *Maxam* (1917), 70 Ind. App. 266, 117 N. E. 801, 118 N. E. 839.

Even if error in the assessment of the amount of recovery were properly presented, appellant cannot prevail in his contention that the same is too large for his reasons presented. It appears by the evidence that there were 17,490 shares of stock issued in Sullivan and Knox counties. This includes 348 shares, which the record shows, but which appellant has inadvertently omitted from his brief. That this stock had been paid for in cash appears by the evidence of Miss Solomon, the secretary of appellant, who testified that some of the stock sold for cash, some sold on notes, and some was traded for stock in other companies, and that, if it was paid for by note, the stock was not delivered until the note was paid. The par value of this stock, as appears by the company's records, if we understand the evidence, was $174,900, though the court has found the par value to be $100 per share. In any event, it seems apparent that the selling price was $10 per share, or a total of $174,900. But it appears by the evidence that $27,500 of this stock was sold before the

execution of the contract between appellant and appellee. Deducting this amount, then, from the total amount of stock issued in the two counties, we have $147,400 of stock sold and for which cash was received after the execution of the contract. By this court's computation, it appears that there is a discrepancy of $590 in the amount of stock sold after the contract was executed, the commission upon which would be $29.50. But no question is presented as to this error.

Finally, appellant contends that the court erred in its conclusions of law. In the consideration of this question, it must be kept in mind that such conclusion of law is based upon the special findings of fact, and, for the purpose of the exception to the conclusion of law, it is admitted that the facts are correctly found. For the purpose of determining this question, the court cannot go to the pleadings or to the evidence, but must confine its consideration solely to the facts as found. The question as to the construction of the contract, whether reasonable or unreasonable, is not presented by exceptions to the conclusions of law, but rather, under the motion for a new trial, that the findings were not sustained by the evidence. We have heretofore held, however, that the parties themselves put a construction upon the contract and that the court correctly followed such construction.

It clearly appears by the findings that the purchasers of the stock had paid to appellant, and that appellant had received therefor, $147,990 and that five per cent on that amount was $7,399.50. This was a sufficient finding in this regard, after deducting $630, which it appears by the findings had been paid to appellee, and computing interest upon the balance at the rate of six per cent per annum from July 22, 1918, the date of filing the complaint, to sustain the conclusion of law that appellant was entitled to recover $9,511.02 principal

and interest. It does not appear by the findings that there had been a complete settlement between the parties. On the contrary, it appears that there was an unpaid balance of $150 and other liabilities on stocks not paid for, and, on which, appellee was entitled to commission when they were paid for, and further that the written monthly statements made by appellant to appellee did not contain a complete showing of all sales made in the two counties after the contract was entered into.

The conclusion of law cannot be successfully challenged upon the ground that the findings show that the agreement between the parties was against public policy. A failure to find that the contract in any way contemplated wrongful acts by the parties thereto is a finding against the appellant, as all contracts are presumed to be valid until the contrary appears. By the terms of the contract, the most that was required of appellee was that he should furnish information with reference to prospective purchasers, and there is nothing therein that required appellee to do anything immoral, or which affected the public good, or that was forbidden by statute, or that required appellee to perpetrate a wrong upon any third person. The mere fact that, by the terms of the contract, appellee was to receive a commission for the information which he gave under its terms, and that he was not to reveal the fact that he received the same, does not make such contract void as against public policy. We note here that by the terms of the contract, as the same appears in the record, the "first party" (which was appellant and not appellee) agreed not to divulge his compensation to anyone. The contract was not void as against public policy because of the Public Securities Act passed in 1920 (Acts 1920 [Spec. Sess.] p. 83), for the transactions

here involved were before the passage of that act. The court did not err in its conclusion of law.

The judgment is affirmed.