HADLEY ET AL. *v.* KAYS ET AL.

[No. 17,964. Filed April 11, 1951.]

*Walter G. Todd, Milton E. Craig,* both of Indianapolis; and *Charles H. Foley,* of Martinsville, for appellants.

*Kivett, Chambers, Vernon & Kivett,* of Indianapolis, for appellees.

BOWEN, P. J.—This is an appeal from a judgment in an action in which the appellees, being the daughter and widow and only heirs-at-law of Guy W. Hadley, deceased, sought to be declared the owners of a tract of land in Morgan County, Indiana, referred to as the Hutton farm.

The substantial facts are undisputed, and from the record the following facts appear: That Guy W. Hadley, deceased, was the son of Macy B. Hadley who died

intestate in the year 1900, the owner in fee simple of the real estate hereinafter to be referred to as the Home place.

Macy B. Hadley left surviving him as his only heirs-at-law his widow, Laura Hadley and his sons, Guy W. Hadley and Robbins M. Hadley. The widow and children of Macy B. Hadley occupied said Farm home as their residence until 1910. In February, 1910, said widow and children purchased a farm know as the Page farm. Guy W. Hadley had become married, and at the time of the purchase of the Page farm, it was understood between the widow and her sons, that the widow and Robbins M. Hadley would continue to occupy the Home place and Guy W. Hadley would take charge of the Page place. In making said purchase, Laura Hadley, the mother, furnished $6,000 of the consideration, Robbins Hadley furnished $1,700, and Guy W. Hadley furnished $1,700. By agreements of the parties, the title to the Page farm was taken in the name of the mother, Laura Hadley, and Laura Hadley aided Robbins M. Hadley in procuring the $1,700 which he paid upon the Page place, by becoming surety for said Robbins M. Hadley on a note given to one Iro Conduitt for said sum. And she further aided Guy W. Hadley in procuring the $1,700 which he paid, by signing a note and mortgage to the Northwestern Life Insurance Company to secure the payment of the same by Guy W. Hadley. In the year, 1910, Guy W. Hadley moved to the Page place, took full and complete possession, and Robbins M. Hadley and his mother occupied the Home place, and Robbins M. Hadley had full and complete control of the Home place. Afterwards, Robbins M. Hadley was married, and after such marriage, it was agreed between the mother and the two sons that the mother would move to the town of Mooresville and Robbins M. Hadley and Guy W. Hadley would

furnish their mother means for her support, each to furnish one-half thereof. And it was likewise agreed that Guy W. Hadley was to have the use and rents and profits from the Page place, and Robbins M. Hadley to have like use of the Home place, and under said agreement, Guy W. Hadley occupied the Page place as his home, and Robbins M. Hadley occupied the Home place as his home, and each of said sons contributed equally to the support of their mother, Laura Hadley, until 1916, when she married one Benjamin F. Morgan, and went to live in the home of said Benjamin F. Morgan in the town of Mooresville, after which date, the said Laura Hadley Morgan with her husband supported herself and requested no assistance from either of her sons until the year, 1928. On August 1, 1918, Laura Hadley Morgan being joined with her husband, Benjamin F. Morgan, by quit-claim deed conveyed all of her interest in the Page farm to her son, Guy W. Hadley, but made no release for her claim for the $6,000 which she advanced on behalf of her son to buy the Page farm. On February 17, 1920, the Page farm was sold by Guy W. Hadley, who at such time, held the title to the same for the use and benefit of himself and his brother, Robbins M. Hadley, subject to the right of the mother to be repaid $6,000 which she had advanced in the purchase of the Page farm. At the time of the closing of the sale of the Page farm, arrangements had been made to purchase a farm known as the Hutton farm which is the real estate in controversy, and at the time of this transaction, Laura Hadley Morgan, Guy W. Hadley, and Robbins M. Hadley, were all present participating in the transaction. Guy W. Hadley took and deposited in his account at the bank all proceeds from the sale of the Page farm and from those proceeds paid all the purchase price of the Hutton farm. At the time of this transaction, it

was agreed between all of said parties that title to the Hutton farm should be taken in the name of Laura Hadley Morgan who had furnished $6,000 to aid the sons in the purchase of the Page farm. The appellant, Robbins M. Hadley, testified that "mother did not claim any interest on it, and the point was to adjust matters between us boys, but she held title to the Hutton farm to secure her for money advanced $6,000."

From all of the circumstances in the evidence, it could be reasonably inferred as found by the trial court that the title was to be so held in the mother's name until a family settlement was made which would carry into effect the purpose of all the parties; that Guy W. Hadley would own one of said farms and Robbins M. Hadley the other; and that pursuant to such agreement, title to the Hutton farm was taken in the name of Laura Hadley Morgan on the 17th day of February, 1920.

Immediately following such date, Guy W. Hadley went into full possession of the Hutton farm and from and after such date with the full knowledge of his mother and Robbins M. Hadley, made lasting improvements on such farm, paid taxes thereon, and in all things exercised full and complete ownership over the farm. Also it would appear from the evidence and the circumstances that at all times prior to the purchase of the Page farm, there was an agreement between the parties whereby Guy W. Hadley would take possession of the Page farm, and Robbins M. Hadley would have possession of the Home farm, each would take all the rents and profits, and income from their respective farms, and each would contribute equally for the support of their mother, and it was agreed and understood that at some future date there would be a family settlement where all of the rights of the parties would be adjusted and finally fixed as the Page farm and the

Home farm. And that after the sale of the Page farm and the purchase of the Hutton farm, the understanding remained in full force except the Hutton farm which took the place of the Page farm. Sometime prior to December 30, 1922, Robbins M. Hadley desired the Home farm which he occupied and used as his own to be deeded to him, and that the rights and interests of the parties in and to the Hutton farm and the Home farm be fixed and adjusted by family settlement, and that Laura Hadley Morgan and Guy W. Hadley also desired that a family settlement be made, and for the purpose of carrying out this intention, it was agreed that disinterested persons should make an appraisement of the Hutton farm and the Home farm so that an equal division could be made between the two sons, subject to the right of the mother for support. To carry out this intention, three persons were selected by the mother and two sons to make a comparative appraisement of the two farms. The appraisement was made, and the appraisors' report was that in their judgment the Home farm was worth $2,500 more than the Hutton farm. The mother and sons accepted this report as a fair and just appraisement. The evidence supports the findings that at that time, the title of the Home farm was held by the mother and the two sons as heirs-at-law of Macy Hadley, deceased, and title of the Hutton farm was held by Laura Hadley Morgan for the use and benefit of her two sons, Guy W. Hadley and Robbins .M. Hadley, subject always to the right of the mother, Laura Hadley Morgan; to be supported by the two sons. On such date of December 30, 1922, it was agreed between the mother and the two sons that Guy W. Hadley and wife, and Laura Hadley Morgan and her husband, convey all their interest in the Home farm to Robbins M. Hadley at and for an agreed consideration

of $9,260; that Robbins Hadley would surrender to Guy Hadley any and all claims of title which he had in and to the Hutton farm and to equalize the differences in value the said Robbins M. Hadley would pay to said Guy W. Hadley the sum of approximately $250.00, and it was further agreed that each of the sons would contribute equally to the support of their mother, and that the mother should continue to hold the title to the Hutton place to secure the obligation of the two sons to contribute to her support if and when she should require it; that the Home farm would be the ultimate property of Robbins M. Hadley, and the Hutton farm would be the ultimate property of Guy W. Hadley; that in reliance upon such family settlement, Guy W. Hadley and his wife, Laura Hadley Morgan and her husband, on such date did convey all their interest in and to the Home farm to Robbins M. Hadley, and the said Robbins M. Hadley then and there paid to Guy W. Hadley to the approximate sum of $250.00 to bring about an equalization between said sons and said Robbins M. Hadley did then and there release to Guy W. Hadley any claim which he might have upon the Hutton farm, and agreed to contribute and furnish one-half of whatever might be required to provide for the mother, and that Guy W. Hadley should contribute the other half. It was agreed between the parties that the Hutton farm should be the property of Guy W. Hadley and free from any claim of Laura Hadley Morgan except her right of support from her son. After such date Robbins Hadley exercised complete ownership of the Home farm and afterwards he and his wife, May Hadley, with full knowledge of all of the transactions, sold and conveyed the Home farm and took and appropriated to themselves the proceeds from the sale. Guy W. Hadley took full and complete possession and control of the Hutton farm and exercised all of the rights of

the ownership thereof, and all of the parties continued to treat the Hutton farm as the lands of Guy W. Hadley, and Guy W. Hadley continued in full possession of the Hutton farm making lasting and valuable improvements thereon and claimed to be the owner thereof up until the time of his death which was July 21, 1925. At the time of his death, the said Guy W. Hadley died intestate and left surviving him as his sole and only heirs-at-law his widow, Ella Hadley, and his daughter, Esther Hadley Kays, the appellees herein. After the death of Guy W. Hadley, his widow and daughter paid taxes on the Hutton farm until about the year, 1936. Laura Hadley Morgan did not require any assistance until 1928. In 1928 Laura Hadley Morgan and her husband, Benjamin F. Morgan, who were then advanced in years, desired to move into the house on the Hutton farm and have the use of about ten acres of the farm to aid in the assistance of their support. This was agreed to by Ella Hadley, the widow, acting for and on behalf of herself and her minor child, who were the sole and only heirs of Guy W. Hadley; then about 1936, the said Laura Hadley Morgan desired additional support, and Ella Hadley acting for herself and her daughter, permitted Laura Hadley Morgan to take possession and control and use of the proceeds of the Hutton farm for her support, and Laura Hadley Morgan, at such time, turned over the management of the Hutton farm to her son, Robbins M. Hadley, and the said Robbins M. Hadley and May T. Hadley, at such time, took Laura Hadley Morgan and her husband into their home where they remained for approximately seven months. After the expiration of about eleven months, the said Robbins M. Hadley and May T. Hadley gave notice to Laura Hadley Morgan and Mary Hadley and Wallace Hadley, the daughter and son-in-law of Benjamin Morgan, that the Robbins M. Hadley could no

longer care for such aged people in their home, whereupon an agreement was reached between the Robbins M. Hadley on one side and children of Benjamin F. Morgan that Laura Hadley Morgan and Benjamin F. Morgan would be removed from the home of Robbins M. Hadley; that after said arrangements were made, Robbins M. Hadley continued to collect all the rents and profits and income from the Hutton farm, and from the proceeds from the Hutton farm, paid out for the support of his mother, Laura Hadley Morgan the sum of $906.48. After the division and family settlement on December 30, 1922, whereby Guy W. Hadley received the Hutton farm, Guy W. Hadley under date of March 28, 1923 procured a loan of $2,500 from the Northwestern Life Insurance Company and the note was signed by him and his mother and step-father and was secured by a mortgage on the Hutton farm signed by Laura Hadley Morgan, B. J. Morgan, Guy W. Hadley, and Ella Hadley, his wife. The said $2,500 so procured was used by Guy W. Hadley in making improvements upon the Hutton farm. After the death of Guy W. Hadley, his administrator out of his personal estate, paid $1,500 upon said $2,500 mortgage and left an unpaid balance of $1,000. The interest upon said mortgage was also paid out of the said personal estate of the deceased. At the time that Laura Hadley Morgan moved into the buildings on the Hutton farm in 1928, there was still owing on such debt to the Northwestern Life Insurance Company the sum of $900.00.

At the time of the marriage of Laura Hadley Morgan and Benjamin F. Morgan, they entered into a valid ante-nuptial contract whereby each agreed to take no part of the estate of the one who should die first and that the funeral expenses of the one dying first should be paid out of the estate of the deceased. Laura Hadley Morgan died intestate on the 2nd day of July, 1944, and

at the time of her death, left surviving her, her son, Robbins M. Hadley, and Esther Hadley Kays, the daughter of her son, Guy W. Hadley, deceased, and her husband, Benjamin F. Morgan, who were her sole and only heirs-at-law. The said Benjamin F. Morgan died intestate and in his lifetime and his said heirs-at-law since his death have at all times recognized said antenuptial contract, and said contract has at all times been in full force and effect.

During the pendency of the present action in this court, upon the written agreement of all the parties interested in the real estate known as the Hutton farm, said real estate was ordered sold by a commissioner appointed by the trial court, and by said agreement and the order of the trial court, the rights of the several parties hereto were transferred to the proceeds of said sale.

Upon its finding of facts, the court entered conclusions of law that the law was with the appellees, and that from and after December 30, 1922, Guy W. Hadley and his heirs-at-law were and have been the owners of the property known as the Hutton farm, the title of which was held in the name of Laura Hadley Morgan for the sole purpose of securing her support under the terms of the family settlement described in the findings as made and entered into on December 30, 1922; that Robbins M. Hadley has received his full share of any estate that his mother may have had, and is entitled to no right, title, claim or interest in the Hutton farm; that the administrator of Laura Hadley Morgan has no right, title, claim or interest in the Hutton farm; at the time of the death of Laura Hadley Morgan, the plaintiffs, Esther Hadley Kays and Ella Hadley as heirs-at-law of Guy W. Hadley, deceased, were the owners of the real estate described in these proceedings as the Hutton farm.

The court entered judgment upon the conclusions of law that the appellants, Robbins M. Hadley and May T. Hadley, and Wallace Hadley, Mary Hadley, Hilden Townsend, Ralph Townsend, and Gilbert R. Brown, administrator de bonis non of the estate of Laura Hadley Morgan, deceased, have no right, title, claim or interest in or to the real estate described in the complaint. The court further found that Esther Hadley Kays and Ella Hadley, appellees herein, were the owners of such real estate and entitled to the proceeds from the sale of such real estate after the payment of certain liens and other charges set forth in such judgment.

Errors relied upon for reversal, and not waived, are that the trial court erred in overruling appellants' demurrer to the first and second additional paragraphs of complaint filed by appellees in the trial court, and that the trial court erred in its conclusions of law numbered one to eight inclusive; and that the trial court erred in overruling appellants' motion for a new trial on the grounds, not waived, that the finding of the court is not sustained by sufficient evidence and is contrary to law.

In considering the appellants' assigned error in the court's action in overruling appellants' demurrer to the first and second additional paragraphs of the complaint, we have not set out the pleadings nor shall we discuss the rulings of the court with reference thereto for the reason that where there are special findings of fact and conclusions of law, any error, if any, in overruling the demurrer to the complaint is immaterial. *Karas* v. *Skouras* (1922), 79 Ind. App. 99, 137 N. E. 289; *Fry* v. *Hare* (1905), 166 Ind. 415, 77 N. E. 803; *Watson* v. *Tindall* (1898), 150 Ind. 488, 50 N. E. 468; *Scanlin* v. *Stewart* (1894), 138 Ind. 574, 37 N. E. 401; *New Albany Trust Co.* v. *Nadorff* (1940), 108 Ind. App. 229, 27 N. E. 2d 116; *Woodward*

v. *Mitchell* (1894), 140 Ind. 406, 39 N. E. 437; *Smith* v. *Wells Mfg. Co.* (1897), 148 Ind. 333, 46 N. E. 1000.

In support of appellants' assigned errors No. 4 to No. 11 inclusive, that the court erred in each of its conclusions of law, and by proposition No. 4, the appellants contend that there are no facts proven to sustain the amended complaint, and no facts alleged in the remaining paragraph of complaint to warrant the court to render the conclusions of law as set out in the record. Such contentions do not present any question as to any error in the conclusions of law by the trial court. In considering assignments of error as to conclusions of law upon special findings of fact, this court must accept such facts as correctly found. We cannot go to the pleadings or the evidence, and we must confine our consideration solely to the facts as found. For the purpose of the exceptions to the conclusions of law, it is admitted that the facts are correctly found. *Lester* v. *Hinkle.* (1929), 90 Ind. App. 193, 153 N. E. 179; *Edmundson* v. *Friedell* (1928), 199 Ind. 582, 159 N. E. 428; *Standard Live Stock Ins. Co.* v. *Atkinson* (1916), 185 Ind. 34, 111 N. E. 913; *Miller* v. *Muir* (1945), 115 Ind. App. 335, 56 N. E. 2d 496; *Hutchens* v. *Hutchens* (1950), 120 Ind. App. 192, 91 N. E. 2d 182.

Other assigned errors make it necessary for this court to consider and determine whether or not there are circumstances shown in the findings and the record in support thereof which are sufficient to create a resulting trust in the real estate in favor of the appellees under the statutes and the definitive decisions.

Section 56-606, Burns' 1943 Replacement, provides as follows: "When a conveyance for a valuable consideration is made to one person, and the consideration therefor paid by another, no use or trust shall

result in favor of the latter; but the title shall vest in the former, subject to the provisions of the next two sections." However, a resulting trust may arise under the provisions of § 56-608, ". . . where it shall be made to appear that, by agreement, without any fraudulent intent, the party to whom the conveyance was made, or in whom the title shall vest, was to hold the land or some interest therein in trust for the party paying the purchase money or some part thereof."

The courts have held that in order for a resulting trust to arise under the provisions of the aforementioned statutes, there must be an agreement conforming to the requirements of Clause No. 3, Burns' 1943 Replacement, § 56-608; such agreement must have been made before title to the real estate was acquired; there must have been a valuable consideration; the transaction must be free from fraud; and the proof must be clear and unequivocal. *Price* v. *Brittain* (1923), 80 Ind. 294, 137 N. E. 620; *Koehler* v. *Koehler* (1920), 75 Ind. App. 510, 121 N. E. 450; *Peoples, etc., Trust Co.* v. *Mills* (1923), 193 Ind. 131, 139 N. E. 145.

No formal agreement, or particular form of words is required, and such a trust will not be permitted to fail because of a mere lack of form or method of proof, if the evidence clearly and unequivocally establishes the essentials for the creation of such resulting trust. *Rickes* v. *Rickes* (1924), 81 Ind. App. 533, 141 N. E. 486; *Hartley* v. *Hartley* (1917), 279 Ill. 593, 117 N. E. 69.

In the instant case there are findings which are supported by the evidence, and by reasonable inferences which may be drawn therefrom, which establish that there was an agreement prior to the time the title to the Hutton farm was taken in the mother's name that she was to hold such land in trust

for the appellees' decedent, Guy W. Hadley, whom appellees claim furnished all of the purchase money, but who, under any reasonable interpretation of the evidence, furnished at least a part of such purchase money; and also, in trust for appellant, Robbins M. Hadley. The appellant himself testified that his mother claimed no interest in it, and the *point* was to adjust matters between appellant, Robbins M. Hadley, and his brother, Guy W. Hadley, and she held title to the land to secure her for her advancement in the purchase of the Page farm. Appellant by the use of the words "the point was to adjust matters between us boys," could only have been referring to the point or purpose of some agreement. The mother and two sons were all present and participating in the transaction concerning the sale of the Page farm and the purchase of the Hutton farm. From all of the circumstances in the evidence, considering the purchase and ownership of the two farms, the actions of the parties with reference to the use and occupancy of the Home place and the Page place and considering the fact that this was an agreement between a mother and her two sons with mutual affection and confidence, and that from the appellant's own testimony "that the title was taken in the mother's name in order to make an adjustment of interests of the two boys," it seems to this court that it could be reasonably inferred, as found by the trial court, that the title was to be held in the mother's name until a family settlement was made which would carry into effect the purpose of all of the parties, and that pursuant to such agreement, title to the Hutton farm was taken in the name of the mother. This agreement arose and there was a meeting of the minds and agreement of the parties, the two sons and the mother, prior to the time title was taken in the mother's name. It may be that the agreement once made might

cover matters transpiring through a period of years, but this would not destroy the legal effect of the agreement upon the creation of a resulting trust in connection with the deed to the mother. *Rickes* v. *Rickes, supra; Marcilliat* v. *Marcilliat* (1890), 125 Ind. 472, 25 N. E. 597; *Holliday* v. *Perry* (1906), 38 Ind. App. 588, 78 N. E. 877.

The findings show that the transaction was free from fraud, and the proof of this agreement seems clear and unequivocal, and it did not lack for consideration. Therefore, it seems that such agreement had all of the requirements for the establishment of a resulting trust.

The family settlement which was concluded in accordance with the prior agreement of the parties to make such a settlement, was made on December 30, 1922, while Guy W. Hadley was in possession of the Hutton farm, and it was agreed between the sons and the mother that Robbins M. Hadley would have the Home farm and Guy W. Hadley would be the owner of the Hutton farm, and the parties changed the indebtedness of the mother of $6,000 secured by a deed, which was in fact a mortgage, to an obligation to support the mother during her lifetime. The appellees' decedent, Guy W. Hadley, paid $250.00 to bring about an equalization after an appraisement of the two farms. Thereafter, all of the provisions and conditions of the agreement as to support were carried out. Guy W. Hadley made lasting improvement on the Hutton farm, and paid taxes on the same until his death, and after his death, his heirs, the appellees, continued to recognize and carry out the family agreement, and permitted the mother to have all of the rents and profits from the farm as part of the obligation to support the mother.

Family settlements such as are shown by the facts in the case at bar are especially favored by the law, and

are upheld by the courts to encourage and maintain family confidence, and to avoid frauds, and the abuse of such confidence. *Rickes* v. *Rickes, supra; Wright, Admr.* v. *Jones* (1885), 105 Ind. 17, 4 N. E. 281; *Hensler* v. *Alberding* (1927), 86 Ind. App. 372, 158 N. E. 243; *Church* v. *Cole* (1871), 36 Ind. 34.

There are sufficient findings by the trial court supported by substantial evidence to establish that Guy W. Hadley became the owner of the Hutton farm, and that the mother held, the same in trust to secure an obligation of support, and that Robbins M. Hadley had no claim upon the Hutton farm.

The appellant, Robbins M. Hadley, received all of the benefits of the family settlement, and it cannot be contended that he did not receive his full share of the ancestral estate, and even obtained a deed from appellees' decedent, Guy W. Hadley, for his interest in the Home farm with no showing of consideration other than the consideration which passed under the family settlement agreement. And in addition, his default caused an encumbrance to be placed upon the Hutton farm of more than $1,700. Under these circumstances, the conclusion of the court that the law is with the appellees is fully supported by the doctrine of advancements. *Dyer* v. *Armstrong* (1854), 5 Ind. 437, 438; *Herkimer* v. *McGregor* (1890), 126 Ind. 247, 25 N. E. 145; *Pruner* v. *Koontz* (1894), 138 Ind. 252, 36 N. E. 1094; *Barnett* v. *Thomas* (1905), 36 Ind. App. 441, 75 N. E. 868; *Scott* v. *Harris* (1890), 127 Ind. 520, 27 N. E. 150; *New* v. *New* (1890), 127 Ind. 576, 27 N. E. 154.

There is nothing shown in the carrying out of the terms of the family settlement agreement by Guy W. Hadley, and his heirs-at-law, the appellees herein,

which would destroy or impair their rights in equity and in justice to the ownership of the Hutton farm by reason of the resulting trust shown by the findings and the evidence.

Since, such resulting trust did arise, the questions raised by the appellant as to the Statute of Limitations have no application to this case.

Appellants, also assert the Statute of Frauds as a bar to the decision of the trial court vesting title to the real estate in question in appellees. An oral contract with reference to real estate is not void, but only unenforceable. The facts and circumstances as particularly related in this opinion disclose a situation which brings this case within the rule that where a contract has been so far performed by one party that the failure to enforce the same would work a fraud upon the party who has complied with the contract, the party who has received the benefits of the contract cannot defeat performance by asserting the contract is within the Statute of Frauds. *Purity Maid Products Co.* v. *American Bank & Trust Co.* (1938), 105 Ind. App. 541, 14 N. E. 2d 755; *Shank* v. *Kuhn* (1920), 74 Ind. App. 264, 128 N. E. 775; *Wulschner* v. *Ward* (1888), 115 Ind. 219, 17 N. E. 273.

For the reasons given herein, the trial court did not err in its conclusions of law and in overruling appellants' motion for a new trial. Judgment affirmed.

Royse, J., not participating.

NOTE.—Reported in 98 N. E. 2d 237.