## CHARLES PHELPS *vs.* HOMER FOOT, Trustee, & others.

Three tenants in common of a hotel and the furniture therein signed a " proposed division " thereof, which set out, by metes and bounds, three parcels into which the real estate was to be divided, and specified the conditions as to occupancy, and the easements and appurtenances belonging to each parcel, and further provided that, " the division being completed, the parties agree, each with the other, to exchange title deeds with warranty, and to secure the payment of cash equivalents that may represent the differences in value of the several divisions; " appended to which were a schedule of the rents of the different parts of the estate for the two years next preceding, with these words, signed by the parties, " the only question to be determined by the appraisers is the true and relative value of each part after the division; " and a report of the appraisers. The parties also agreed orally that their several liabilities under the mortgage upon the estate should be so apportioned among themselves, that each should pay such proportion thereof as the appraised value of the lot to be conveyed to him should bear to the appraised value of the whole estate; and afterwards agreed that the first choice of lots should belong to him who would offer the highest sum for it; and he who offered the highest sum made a promissory note therefor to the other two, and selected a lot, and, with the consent of the others, took possession of it as the part which he was to have upon the division, made upon it the alterations which the conditions of the division required, leased it in his own name, and was afterwards recognized in various ways by the survivor of the two others, as entitled to hold and enjoy that parcel in severalty. But in the mean time, and before any agreement as to which of the others should take either of the remaining parcels, or arrangement for the division of their liability under the mortgage, or execution of any deeds of partition, one of the other two had died. *Held*, that the division had not been completed before his death, and could not now be completed according to the intention of the parties, and that equity therefore would not decree a conveyance of the lot, so selected, to him who had selected it.

BILL IN EQUITY by Phelps against Foot as trustee of Lucy G. Orne, and against the administrator, widow and children of John Childe, to compel the specific performance of an agreement between Phelps, Foot and Childe, for the division of the hotel and estate in Springfield, known as the Union House Property, and of the furniture therein. The case was heard before *Dewey*, J., upon the bill, answer, replication and proofs, and by him reported to the full court.

*G. Ashmun & N. A. Leonard,* for the plaintiff.

*R. A. Chapman & G. Walker,* for the defendants.

HOAR, J. There are several questions of interest and importance in this cause, which have been ably argued by counsel, which we do not now decide, because there is one view of the

case, which is conclusive upon its merits as presented by the bill.

The bill seeks to enforce the specific performance of a contract for the partition of real estate. As the foundation of the right which the court are asked to establish by their decree, it is obvious that the plaintiff must show that such a contract was made. If the whole evidence upon which he relies, supposing all of it to be competent, would not be sufficient to prove such a contract, complete and capable of execution, it would be a fruitless application of labor to consider the effect of the statute of frauds upon the evidence, or the obstacles which have been suggested to the granting of the particular relief desired. There must be a right, before the questions affecting the remedy can assume practical importance. We have therefore examined the whole evidence carefully, to determine whether, if Childe were still living, and everything which the parties to the transaction have done were proved by writings under their hands, we could find that a complete contract, such as the plaintiff seeks to enforce, was ever made and concluded between them.

The paper relied upon by the plaintiff is entitled, " Proposed Division of Union House Property." It proceeds to set out three parcels into which the real estate is to be divided, by metes and bounds, and to determine the conditions as to occupancy, and the easements and appurtenances belonging to each of the three. It then provides as follows : " 5th. The division being completed, the parties agree, each with the others, to exchange title deeds with warranty ; to secure the payment of cash equivalents, that may represent the difference in value of the several divisions," &c.

There was added in pencil, at some distance down the paper, a schedule of the rents of the different parts of the estate for the two years next preceding, with these words : " The only question to be determined by the appraisers is the true and relative value of each part after division," with the signatures of Childe, Phelps, and Foot, trustee, also in pencil.

The three appraisers referred to appraised the several parcels, and made a written report of their appraisal.

It is further alleged in the bill, that the whole estate was sub-ject to a mortgage to the Springfield Institution for Savings, for the sum of eight thousand and three hundred dollars ; and that the parties agreed that their several liabilities under said mortgage should be so equated and apportioned among them-selves, that Phelps should be bound to pay such proportion thereof as the appraised value of the lot to be conveyed to him should bear to the appraised value of the whole estate. It appears by the evidence that, after the division of the property into the three parcels, it was agreed by the parties that the first choice of lots should belong to him who would offer the highest sum for it ; that Phelps offered five hundred dollars, (which was more than either of the others would give,) and that he made a promissory note for that sum, which he delivered to Childe and Foot ; that thereupon he selected lot No. 1, and, with the con-sent of the others, took possession of that part of the estate as the part which he was to have upon the division, made the alterations upon it, which the conditions of the division required, leased it in his own name, and was afterwards recognized in various ways by Foot, as rightfully in possession, and entitled to hold and enjoy that parcel in severalty.

But in the mean time, and before any agreement as to which of the others should take either of the remaining parcels, or arrangement for the division of the liability under the mortgage, and before any deeds of partition were executed, Childe had died ; and the plaintiff thereupon claims that he is entitled to have the agreement executed so far as he is concerned, by a release to him of the parcel which he had selected, leaving Foot and the heirs of Childe to hold the other two parcels in com-mon, and to bear jointly the responsibilities which may attach to them.

We do not think that this is consistent with the true con-struction of the agreement, or comes within the intention of the contracting parties. That agreement contemplated a division of the estate between the three, not the setting off of a portion to one, and leaving the rest to be held undivided by the other two. The title deeds were to be exchanged, " the division being

36*

completed;" and it was not completed by setting off one parcel to Phelps. The assignment of that parcel to him was but the first step toward its completion, and was made in the belief and upon the supposition that it would be afterward completed, by the assignment of a separate parcel to each of the others, in some manner to be subsequently determined. The death of Childe made such a completion impracticable, unless the heirs of Childe chose to come to an agreement with Foot. The subsequent acts of Foot seem to have been done with the expectation that the contract would be carried out, and that he and the heirs of Childe would agree which parcel of the two remaining should be taken by them respectively. But the court cannot now decide which of the lots, No. 2 and No. 3, either of the defendants shall be compelled to take; nor is there any mode in which we can compel them to agree. Until this is decided, it is impossible to determine what proportion of the mortgage Foot should pay or assume, or whether he should pay or receive a sum of money to equalize the partition. We think the whole contract with Phelps was contingent and prospective, and made in reference to the further division which the death of Childe has interrupted. His claim cannot therefore be supported.

The amendment to the bill, which seeks for a division of the personal property, must also fail, because that division was made to depend wholly **upon a previous** partition of the real estate.                                    *Bill dismissed.*