HENSLER ET AL. *v.* ALBERDING ET AL.

[No. 12,893.    Filed October 6, 1927.]

1. PARTITION.—*Failure of commissioners selected by heirs to apportion lands among them to place on map showing their apportionment value of each tract and to divide land into parcels of equal value was immaterial where heirs subsequently agreed to "draw lots."*—Where the heirs of a decedent selected commissioners to apportion his lands among them, pursuant to written directions that they were to divide the same into five parts, make a map of the same and mark thereon the value of each share, the fact that they did not mark the values thereon or divide the land into tracts of equal value, was immaterial where the heirs made a supplementary agreement to "draw lots" for the shares, as that could be done just as well without knowing the value which the commissioners had placed on each parcel of land. p. 379.

2. PARTITION.—*Equity will not award partition to one in violation of his agreement.*—Equity will not award partition at the suit of one in violation of his own agreement, as the agreement works an estoppel against the right to partition. p. 381.

3. PARTITION.—*Verbal agreement to contrary sufficient to preclude partition.*—A verbal agreement to the contrary is sufficient to preclude a suit for partition if it has been so far performed that to permit a party to repudiate it would, of itself, be a fraud. p. 381.

4. PARTITION.—*Heirs' agreement as to partition of lands should be construed so as to carry out their intention.*—An agreement among heirs, made in an attempt to avoid an action in court to partition their ancestor's land, should be construed, if possible, so as to carry out the intention of the parties. p. 385.

5. PARTITION.—*On appeal from a denial of partition between heirs because of agreement to the contrary, it will be inferred that they signed the agreement with knowledge of the facts.*— On appeal from a suit for partition, in which partition was denied because of an agreement between the heirs of a decedent to effect a mutual partition of his lands, such agreement consisting of a written agreement to have commissioners divide the lands into five parts as nearly equal in value as possible and to prepare a map showing such parcels and their respective values, and a written supplemental agreement to draw lots according to the division of the land as shown on the plat, such supplemental agreement having been made after they had seen the map as prepared by the commissioners and knew that it did not show the values and was divided into ten parcels, it will be inferred that they signed the supplemental agreement with full knowledge that the values had not been marked on the plat, and that the land had been divided into ten parts instead of five and that the values were not approximately equal. p. 386.

From Jasper Circuit Court; *George O. Williams,* Judge.

Suit for partition by Charles Hensler and another against Rose Alberding and others. From a judgment denying the partition, the plaintiffs appeal. *Affirmed.* By the court in banc.

*Hanley & Hanley,* for appellants.
*Moses Leopold,* for appellees.

McMAHAN, J.—This is an action for partition commenced by Charles and George Hensler against Rose

Alberding, Clarissa Mitchell, Jacob Hensler and others, the plaintiffs and the named defendants being the children and only heirs of Christian Hensler, who died intestate November 1, 1923, the owner of the real estate in question. The complaint was an ordinary complaint for partition and alleged that each of said children owned a one-fifth interest in the land, a 424-acre farm in Jasper county. The named defendants, hereafter referred to as "appellees," filed·an answer in three paragraphs, the first being a general denial. The second and third paragraphs admit the ownership of the land as alleged in the complaint, but, in bar of the right of appellants to maintain an action for partition, each paragraph alleges an agreement, dated April 18, 1924, by the owners of the land to appoint commissioners to divide the land into five parcels or groups and to draw a map or plat showing manner of the division, and a supplemental agreement of May 10, 1924, by which the several owners agreed to draw lots in order to determine which group of land each of them was to have, and appellants' failure and refusal to draw lots or to perform their part of the agreement.

Appellants replied by a general denial, and appellant Charles filed a second and separate paragraph of reply to which a demurrer was sustained. This second paragraph of reply alleges the execution of and sets out the agreement of April 18, 1924; that it was the understanding of the parties that, when the commissioners made the map mentioned in the agreement, the parties were to meet, inspect and inform themselves as to terms of the division and the value placed by the commissioners on each one-fifth allotment, and, if possible, make a mutual selection of such allotments; that the agreement of May 10, was supplemental to, but in no way modified, the agreement of April 18, as to the submission of map with values marked and partition to be made; that while

the commissioners did make a division and placed values upon the several tracts of land and drew a map thereof, appellants were at no time informed as to such values; that appellant Charles had no notice or knowledge of the time and place of the drawing mentioned in the complaint and that appellees have not taken or assumed to take possession of the lands so drawn by them.

A trial resulted in a judgment in favor of appellees, denying a partition. The errors assigned relate to the action of the court in sustaining the demurrer to the second paragraph of reply of appellant Charles, and in overruling the joint motion of appellants for a new trial.

The real and substantial question involved relates to the right of appellants to prosecute an action for partition, in view of the agreement of April 18, and the supplemental agreement of May 10, 1924. Appellees insist that appellants have forfeited their right to have an award of partition in this action, by reason of the above mentioned agreements. Appellants contend the agreements are uncertain and indefinite and do not estop them from prosecuting this action; that the commissioners agreed upon did not mark on the plat the value placed upon each tract of land, and that this failure excused and released appellants from the drawing of lots.

We will first direct our attention to the contention that the decision is not supported by sufficient evidence. The evidence is sufficient to prove the following facts:

Christian Hensler died intestate November 1, 1923, the owner of a 424-acre farm in Jasper county, leaving five children, the two plaintiffs and the three named defendants, as his only heirs. These children were not able to mutually agree upon a division of the real estate and, in order to avoid an action in court for partition, they met at the State Bank of Remington, April 18, 1924, and executed a written agreement, which, omitting signatures, is as follows:

"To James H. Gilbert and Frank Howard:

"We have agreed and selected you two men as commissioners with power to select a third man to apportion the Real Estate in five parts, making a rough map of same, with a value marked on each fifth as near equal value in five parts as you can. This is for the division of the Christian Hensler Estate."

Following the execution of this agreement, the two commissioners viewed the land, 160 acres of which was of poor quality and worth much less per acre than the remainder of the land. It was the judgment of the commissioners that the 100 acres lying immediately east of the 160 acres was worth $125 per acre; 114 acres just south of the 100 acres, were worth $135 an acre; 50 acres west of the 114 acres were worth $150 an acre; while the 160 acre tract ranged in value from $25 to $50 an acre. The commissioners believed the fairest and best way to divide the land was to divide the 160 acres into five parcels of 32 acres each and to give each child an equal number of acres of the same, and to divide the 264 acres of more valuable land into five parcels, two containing 57 acres each, and three containing 50 acres each. They thereupon drew a plat of the land indicating the manner in which they believed the land should be divided. On May 10, 1924, the five owners of the land and the two commissioners met at the bank. The map or plat showed the division as made by the commissioners and the placing of a 32-acre tract and of one of the 50 or 57-acre tracts in each of five separate groups, one group for each owner. This map, with the groups indicated by the letters A, B, C, D and E, was exhibited to the interested parties. The commissioners did not indicate on the map the values they had placed on the several parcels, but they did prepare a paper on which they showed such values. This paper, however, was not shown to the parties and no one except

the commissioners had any information as to the values placed on the land by the commissioners. Prior to May 10, the parties had not determined upon any plan of ascertaining or deciding which parcels or group of land any one of them should have. The agreement which the parties signed in April had been written by the president of the bank where the parties met. He had learned that the heirs of another large estate had accomplished a partition of their land without court proceedings, so he wrote to an officer of another bank, making inquiry concerning the matter, and received a letter to the effect that the owners had agreed upon commissioners to divide the land into as many parcels as there were heirs; that a description of each parcel of land was placed in a sealed envelop and that each heir, without knowing the description in any one of the envelops, drew an envelop, and that, after the drawing the heirs exchanged deeds. When the parties met on May 10, he read this letter to appellants and appellees, and as a result the parties agreed to draw lots, and an agreement, dated May 10, 1924, was signed by all the parties, and which, omitting date and signatures, is as follows:

"This further agreement is supplemental to and a part of an agreement entered into April 18, 1924, selecting James H. Gilbert and Frank Howard commissioners to value and appraise the land in the Christian Hensler estate. We hereby further agree to draw lots and abide by same as to lot or part drawn and further agree to quit-claim deed to each other in a legal way to establish title."

It is to be inferred that appellants were not entirely satisfied with the manner in which the commissioners had divided the land and were not particularly anxious to proceed with the drawing. Appellant George Hensler was of the belief that the father had left a will or

had made deeds dividing the land among the children and he desired that the drawing be postponed until further search could be made for a will or deeds, and he would not sign the supplemental agreement unless further time was given for such search. The parties thereupon signed an agreement reading as follows:

"We hereby agree that if a Will, Deed or Deeds is found in a reasonable time made by Christian Hensler which may affect in any way the title to lands or property of said Christian Hensler that such Will or Deed or Deeds shall be complied with by all heirs."

After the parties had signed this last agreement, they then signed the supplemental agreement of the same date. No progress was made in getting the parties together to draw lots until in March, 1926, although efforts had been made to that end. At one meeting held after May, 1924, four of the parties met, for the purpose of drawing lots but, because of the absence of appellant George, no attempt was made to draw. In March, 1926, an effort was made to get the parties together for the purpose of drawing. Appellants were notified there would be a meeting of the children at the bank at 2 p.m. March 3, 1926, for the purpose of drawing. Neither of appellants attended this meeting, but refused and failed to participate in the drawing. On this last named day, five sealed envelops marked A, B, C, D and E respectively and each containing the description of one group of the land as marked on the map and grouped by the commissioners were placed on a table at the bank, and after being shuffled, appellee Rose drew envelop marked C. Appellee Jacob drew envelop marked D, and Clarissa, or some one drawing for her, drew envelop marked A. Envelops marked B and E were not drawn. Appellants were later urged to go to the bank and complete the drawing, but refused to do so, and on

April 6, 1926, filed their complaint in the instant case for partition.

From the schedule of values placed upon the several parcels of land by the commissioners, the two tracts in group A were worth $558 less than what the person drawing that group was entitled to receive; group B was worth $718 less; groups C, D and E were worth $142, $407, and $727 more respectively than the persons drawing such groups should receive, and, in order to make the division fair and equitable, the parties drawing groups C, D, and E would have to pay a total of $1,276 to the persons drawing groups A and B.

Appellant Charles Hensler testified that he had not been notified of the meeting when the drawing was had in March, 1926; that the only time he had notice of a proposed drawing was at a time when he was present and when he objected and refused to draw because he did not know the value of the land as placed thereon by the commissioners.

Appellant George Hensler did not testify at the trial and we are not informed as to why he refused to participate in the drawing. On appeal, he joins with appellant Charles in the contention that the verdict is not sustained by sufficient evidence, because the commissioners divided the land into ten "parts" instead of into five parts, and then placed the ten parts in five groups; that they did not mark the value of each fifth part, and that the commissioners violated the agreement of the parties by dividing the land so that certain of the heirs would have to pay other heirs an amount in cash in order to equalize the value of the lands as divided.

We are not impressed with the contention that the failure of the commissioners to mark the value of the several parcels of land on the map made by them

1. as required by the contract of April 18, rendered the contract between the parties as finally made

void and not binding on appellants, and excused them from drawing. A casual reading of the agreement as first made clearly shows that it was preliminary to a subsequent partition by agreement. Nothing was said in that contract as to how the partition was to be had. If the two commissioners had, in the language of the agreement, apportioned "the real estate in five parts making a rough map of same with a value marked on each fifth" it would have been of no avail unless the interested parties had thereafter agreed upon a plan for determining the particular part of the land each party should have. It is quite evident that when the parties met on May 10, they realized it would be necessary for them to agree upon a plan for deciding which particular tract or group each should have. Knowing that nothing could be accomplished until a plan was agreed upon, they, on that day, executed the supplemental agreement, whereby they agreed "to draw lots and abide by same as to lot or part drawn," and to quit-claim "to each other in a legal way to establish title." With the supplemental agreement to draw lots to effectuate partition, marking the value on the map was not essential. The map as prepared by the commissioners showed the parcels of land in each of the five groups, and, as was said in *Beaver* v. *Trittipo* (1865), 24 Ind. 41, 44: "It was land, not money, which the parties were seeking to divide, and whether a value was fixed upon the lands, expressed in dollars, or not, was not an essential thing." The end to be accomplished was that the lands placed in each group should be as near equal in value to the land in each of the other groups as could reasonably be done. The parties could draw lots just as well without knowing in advance the value which the commissioners had placed on each parcel of land as they could with that knowledge. There is no claim that the commissioners, in dividing the land into groups, were guilty of any

fraud or misconduct or that they did not divide the land into five parts of as near equal value as could reasonably have been done.   In fact, the commissioners had, prior to May 10, 1924, viewed the land and made a map showing the division of the land into ten parcels and the placing of these ten parcels into five groups—one for each of the five owners.   They had at this time placed a value upon each parcel, and placed the same on a paper other than the map.   The parties knew this had been done.   They saw the map before they entered into the supplemental agreement, and the only reasonable inference to be drawn from the facts is that the parties, at that time, with knowledge of the fact that the land had been divided into groups as shown on the map, executed the supplemental agreement to draw lots in case a will or deed could not be found within a reasonable time, and that the drawing was to be made without the value of the several parcels being marked on the map.

The phrase "to draw lots" has a well-defined meaning. According to Webster, it means "to determine an event by drawing one thing from a number whose marks are concealed from the drawer."   According to the Century Dictionary, it means, "to draw or take from an urn or some other place of concealment pieces of paper, or straw, etc., variously marked or of different lengths, for the purpose of determining, by the accident of drawing, some choice or question."   See *Wilkinson* v. *Gill* (1878), 74 N. Y. 63, 65, 30 Am. Rep. 264.

Appellants contend that notwithstanding the agreements heretofore referred to, they are entitled to prosecute this action.   Equity will not award partition at the suit of one in violation of his own agreement.   *Hill* v. *Reno* (1883), 112 Ill. 154, 54 Am. Rep. 222; *Dee* v. *Dee* (1904), 212 Ill. 338, 72 N. E. 429; *Ingraham* v. *Mariner* (1901), 194 Ill. 269, 62 N.

E. 609. In such a case, the agreement works as an estoppel against the right to partition. *Schmidt* v. *Schmidt* (1924), 311 Ill. 458, 143 N. E. 75. This is true though the agreement is verbal, if it has been so far performed as that to permit a party to repudiate it would itself be a fraud. *Martin* v. *Martin* (1897), 170 Ill. 639, 48 N. E. 924, 62 Am. St. 411. *McInteer* v. *Gillespie* (1912), 31 Okla. 644, 122 Pac. 184, Ann. Cas. 1913E 400; *Hardin* v. *Wolf* (1925), 318 Ill. 48, 148 N. E. 868.

An examination of the cases cited by appellants, disclose that, in *Milburn* v. *Wemple* (1924), 156 La. 759, 101 So. 132, the agreement for partition was signed by attorneys and not by the parties. One of the interested parties was a minor. It was there held that a ratification of an agreement of partition, by taking possession, in order to be complete and effective, must be performed by all of the parties in interest. It was also held that the minor and one other party were not bound by the agreement.

In *Ferrell* v. *Ferrell* (1913), 253 Mo. 167, 161 S. W. 719, the parties agreed in substance to meet at a time and place and partition the land according to the value of each acre, and if they failed to agree, they should select three appraisers, who should act as arbitrators and appraise the land, the decision of the arbitrators to be binding. The contract was not one to partition the lands, but to meet and arrive at such an agreement in the future, and in case of their failure to agree, not to submit the partition to arbitration, but to submit to arbitrators the question of the value of each particular acre. It was held the contract was not subject to specific performance, or a bar to an action for partition.

In *Dixon* v. *Johnson* (1924), 202 Ky. 328, 259 S. W. 698, the parties agreed to submit the matter of partition to commissioners or arbitrators. The commission-

ers made an award dividing the land, keeping within the matters submitted to them. One of the parties, not being satisfied, brought an action for partition. The agreement to submit to commissioners with the award of the commissioners was held to be a bar to the action. It was also held the award could not be set aside except for fraud or palpable mistake.

*Adams* v. *N. Y. Bowery Fire Ins. Co.* (1892), 85 Iowa 6, 51 N. W. 1149, was an action on a fire insurance policy. The defendant sought to defeat recovery by alleging a provision in the policy for arbitration and an award by arbitration. The arbitration was not in accordance with the agreement and was held not a bar to the right to maintain an action on the policy.

In *Phelps* v. *Foot, Trustee* (1859), 79 Mass. (13 Gray) 423, three tenants in common of certain property signed a "proposed division" thereof, describing the three parcels into which it was to be divided, and providing that, "the division being completed, the parties agreed to exchange deeds," and "to secure the payment of cash equivalent" representing the differences in value of the several divisions. There was added in pencil on the same sheet of paper with the contract a schedule of rents of the different parts for the next two years, followed by the statement: "The only question to be determined by the appraisers is the time and relative value of each part after division," with the signatures of the parties. The appraisers made a report of their appraisal. The property was subject to a mortgage. No provision was made in the agreement as to how the mortgage debt should be proportioned. No method was determined upon as to how the parties would decide the particular parcel each was to receive. It appeared from the evidence that, after the appraisement, the parties orally agreed that the one who would offer the highest sum should have first choice. Phelps made an offer

which was more than either of the other parties would give, and he thereupon gave the other two parties his note for that amount, after which, he made his selection, and took possession of that part. But, before any agreement was reached as to which of the others should take either of remaining parcels, or the division of their liability under the mortgage or the execution of any deeds, one of the other two died. It was held the division was not completed, and that the death of the one party made such completion impracticable unless the heirs of the deceased party chose to come to an agreement with the third party, and that the court could not compel an agreement. There was no agreement, as in the instant case, that the parties should draw lots. If there had been an agreement for drawing lots and for a division of the mortgage liability, the court would probably have enforced specific performance.

None of the cases relied on by appellants calls for a reversal of the judgment.

We cannot agree with appellants that it was necessary, as a prerequisite to a subsequent determination as to who should have each part as platted, that the values, as fixed by the commissioners, should have been indicated on the plat made by the commissioners. In support of this contention, appellants say: "A reasonable construction to place upon the agreement is that after the appraisers had marked a value on the different tracts of real estate, the parties might then have amicably divided the real estate; failing in this, they would draw lots of such portions and for such values as they might agree upon. They did not agree to draw lots for the apportionments made by the appraisers. They desired and were entitled to know for what they were drawing. The appraisers were to divide the real estate in equal proportions, they were not to command that certain of the heirs should pay cash to other heirs

should any of them draw a tract which was of less value than other tracts. In other words, the agreements provided that the commissioners were to apportion and appraise the real estate, nothing more. They further violated this agreement by failing to divide the real estate, for they apportioned it in such a manner that certain of the heirs were required to pay certain other heirs an amount in cash to equalize the value. This failure also made the agreement void."

This would be a reasonable construction of the agreement of April 18, in which no provision was made for determining who should become the owner of any

4. particular parcel of the land. The agreements of April 18 and of May 10, are not well worded and probably do not express the real intention and understanding of the parties, but there was no claim made in any of the pleadings that there was any mistake made in drafting the agreements or that they do not accurately express the agreement as actually made by the parties. In view of the fact that the parties were evidently attempting to avoid an action in court, for which they are to be commended, and the fact that the agreements were drafted by one not learned in the law or versed in the preparation of contracts, we should, if possible, so construe the agreements as to carry out the intention of the parties. The agreements clearly indicate that the final division was to be made by drawing lots. And, as heretofore indicated, the placing of values on each tract by the commissioners was not necessary for that purpose. It was quite proper to require the commissioners to make a plat of the land as divided and grouped by them, in order that the parties, before the drawing, could see whether the commissioners had made such a division as would not show any mistake tantamount to fraud. This plat was before the parties

before they signed the supplemental agreement, and no objection was made to the manner in which the several tracts of land had been divided. The agreement to draw lots was executed after the parties had been given an opportunity to examine the plat and at a time when they knew the land had been divided into ten parcels and so grouped that each party would draw two parcels.

There is no claim that there was any fraud connected with the execution of the supplemental agreement, or that the parties did not know what they were signing or the effect of the agreement. The inference is that the parties at that time knew the commissioners had not divided the land into five parts of equal value; that they knew there was a difference in the value of the several parts, and, knowing such facts, they signed the agreements to draw lots according to the division and grouping of the land as shown on the plat. No sufficient excuse or legal reason has been shown why the parties should not be bound by the agreement to draw lots. If, upon the completion of the drawing, and the failure of any one or more of the parties to pay the amount that should be paid so as to make the division fair and equitable, if such was the actual intention and agreement of the parties, the agreement as written can doubtless be corrected in a proper action, and enforced as corrected.

The other contentions of appellant are of minor importance and do not call for a reversal. No reversible error being shown, the judgment is affirmed.

Dausman, J., absent.