THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ISAAC MARKS, Plaintiff in Error.

*Opinion filed October 25, 1911.*

CRIMINAL LAW—*when giving endorsed form of verdict to jury will reverse.* In a trial for receiving stolen property, where the evidence is close, it is reversible error for the court to hand to the jury, with the instructions, two forms of verdict, one of guilty and one of not guilty, where the former was endorsed with the word "give" and the latter was without any endorsement, and where there was no direction or explanation given the jury as to the use of the respective forms.

CARTER, C. J., and HAND and VICKERS, JJ., dissenting.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. MARCUS KAVANAGH, Judge, presiding.

JOHN W. CREEKMUR, and GEORGE L. SCHEIN, for plaintiff in error.

W. H. STEAD, Attorney General, and JOHN E. W. WAYMAN, State's Attorney, (ROBERT E. CROWE, of counsel,) for the People.

Mr. JUSTICE COOKE delivered the opinion of the court:

The plaintiff in error, Isaac Marks, was convicted in the criminal court of Cook county of the crime of receiving stolen property and sentenced to the penitentiary. He brings the record of that court here for review, and assigns as grounds for reversal of the judgment against him that improper evidence was admitted on the part of the People, that the verdict is against the weight of the evidence, and that the trial court committed prejudicial error by writing the word "Give" on the margin of one of the forms of verdict handed to the jury.

The indictment charged plaintiff in error with receiving the goods and chattels of Elizabeth M. Wellington know-

ing the same had been stolen from her, for his own gain and with intent to prevent her from again possessing the same. At the time the plaintiff in error was arrested upon this charge numerous articles of jewelry, including those claimed by Mrs. Wellington, were taken by the officers from his place of business at No. 4718 State street, in the city of Chicago, and were kept in the custody of the officers until the trial. Upon the trial one George Clinton testified that he had stolen all these articles at various times from different homes in the city of Chicago and had thereafter sold them to plaintiff in error. For the purpose of showing guilty knowledge numerous witnesses were called on behalf of the State, who identified as their property certain articles of jewelry taken by the officers at the time of the arrest of plaintiff in error and testified that the same had been stolen. Plaintiff in error contends that this record discloses that some of these articles so identified were never in his possession and could not have been purchased by him from Clinton, and points out that some of the property so identified had been stolen after Clinton had been arrested and while he was confined in the Cook county jail. This situation was evidently not discovered by plaintiff in error until after the trial, as no objection was made to this testimony on that ground, and plaintiff in error, when testifying in his own behalf, admitted that all of the articles of jewelry which had been identified theretofore by the various witnesses had been purchased by him from Clinton. While it is evident that some of this testimony was improper, no objection was made to its admission and the trial court was given no opportunity to pass upon its competency.

As the judgment must be reversed and the cause remanded for a new trial it will be unnecessary to discuss the contention of plaintiff in error that the verdict is against the weight of the evidence.

Upon the conclusion of the trial the court read the instructions to the jury. None of the instructions in the series contained any direction to the jury as to the form of their verdict. The court, however, when he handed the instructions to the jury upon their retirement, also handed them two forms of verdict, one being a form for use in case the jury should find the plaintiff in error guilty, and one being a form to be used in case the jury should find him not guilty. The first of those forms reads as follows: "We, the jury, find the defendant, Isaac Marks, guilty of receiving stolen property knowing the same to be stolen, for the defendant's own gain and to prevent the owner from again possessing the same, in manner and form as charged in the indictment, and we further find from the evidence the value of the property so received to be ...... dollars." On the margin of this form of verdict the court, before handing the same to the jury, had written in ink the word "Give." The other form of verdict so handed to the jury was as follows: "We, the jury, find the defendant, Isaac Marks, not guilty," and contained no notation whatever upon the margin or elsewhere. Each of the instructions given by the court had written on the margin the word "Give." The jury returned as their verdict the first form handed them, signed by each member of the jury, the blank in the form filled in showing that they had found the value of the property to be $28. Plaintiff in error urges that by handing this form of verdict to the jury, endorsed in the same manner as the instructions which had been given them, the court, in effect, instructed the jury to find him guilty.

Upon the trial plaintiff in error testified that he had purchased all of the jewelry in question, including that belonging to Mrs. Wellington, from Clinton; that Clinton represented himself to the plaintiff in error as a dealer in second-hand jewelry and that he was engaged in selling the same in houses of ill-fame in the city of Chicago; that

he had tired of this occupation and desired to sell out the stock remaining in his hands, and that plaintiff in error, not knowing that any of these articles had been stolen, purchased them all at one time. Clinton, on the other hand, testified that on each day after committing a burglary he sold the jewelry stolen to plaintiff in error and that plaintiff in error was aware of the manner in which he had acquired it. The only evidence of the guilty knowledge of plaintiff in error, aside from his actions at the time of his arrest, was the testimony of Clinton. This testimony was flatly contradicted by plaintiff in error, who, while freely admitting the purchase of the jewelry, denied that he had any knowledge that Clinton had acquired it dishonestly. Seventeen witnesses, engaged in various lines of business in the vicinity of the home and place of business of plaintiff in error, testified to his good reputation for honesty and integrity. Under this state of the record it was important that the court should do nothing which might be construed by the jury as a direction to return a particular verdict. The jury may have regarded this endorsement on the form of verdict as an instruction or an intimation by the court that they should find the defendant guilty and should fill in the blank finding the value of the property alleged to have been stolen. It is impossible to tell what effect the endorsement may have had upon the minds of the jury or what influence it may have exerted upon them in arriving at their verdict. No direction or explanation was given to the jury as to the use of the respective forms of verdict, dependent upon their conclusion as to the guilt or innocence of the defendant. It was left to them to select the form which accorded with such conclusion, but the court wrote on one of them a word which might readily be understood as at least an intimation that it was to be used. We cannot say that it was not so understood. While the endorsement was no doubt made inadvertently it constituted prejudicial and reversible error.

The judgment is reversed and the cause remanded to the criminal court for a new trial.

*Reversed and remanded.*

CARTER, C. J., HAND and VICKERS, JJ., dissenting:

We do not concur in the conclusion reached in the foregoing opinion. The argument that the jury would understand from the fact that one form of verdict was marked "give" on its margin by the judge that he was instructing them thereby to find the plaintiff in error guilty seems without force. Under sections 72 and 73 of the Practice act the court can only instruct the jury as to the law of the case, and such instructions must be in writing. Under section 77 of said act it is sufficient for the jury to pronounce its verdict in open court without reducing it to writing. It may be reduced to writing and signed by the jury or it may be delivered orally. This court, after reviewing the authorities, held in *Illinois Central Railroad Co.* v. *Wheeler,* 149 Ill. 525, that it was usual and proper for the court to indicate to the jury, before retiring, in what language the verdict should be announced, and that this might be done in the same way that any other directions are given to the jury as to the manner of proceeding in the discharge of their duty; that such direction was in no sense the giving of an instruction as to the law of the case; that usually the purpose of such direction would be best served by reducing it to writing. (*Pioneer Construction Co.* v. *Sunderland,* 188 Ill. 341; *Conness* v. *Indiana, Illinois and Iowa Railroad Co.* 193 id. 464.) The court, however, cannot, in giving the forms of verdict, instruct orally as to the law. (*Ellis* v. *People,* 159 Ill. 337; *Helm* v. *People,* 186 id. 153.) It necessarily follows from these authorities that the court can give written forms of verdict, but the written forms so given should contain no instruction as to the law of the case. These forms of verdict are not, as that word is used in the statutes, "instructions."

Section 74 of the Practice act provides that when instructions are asked which the judge cannot give, he is to write on the margin the word "refused" and as to those he approves the word "given." This court has repeatedly and consistently held that failure to mark an instruction "given," if the record showed that it was, in fact, given, was not such an error as to require a reversal of the judgment. (*Tobin* v. *People,* 101 Ill. 121; *McDonald* v. *Fairbanks, Morse & Co.* 161 id. 124; *Hart* v. *Wabash Southern Railway Co.* 238 id. 336.) Manifestly, if both forms of verdict had been marked "give" or "given" there could be no argument that the jury were misled. On the reasoning of the cases just cited, the failure to mark one of the forms of verdict "give" should not require a reversal of the judgment, as both forms were, in fact, given to the jury. Twelve instructions were given for the People and twenty-four for the plaintiff in error, all marked "give." They covered practically all phases of the law as applied to the facts in the case. Could a juror with sufficient intelligence to serve on a jury be led to believe that the court, by such an indirect method as marking the form of the verdict "give," intended to instruct the jury to find the plaintiff in error guilty and to ignore all the other instructions in the case? The courts, in passing upon questions of this kind, should credit jurors with some judgment and common sense, otherwise jury trials are valueless. It does not seem within the range of possibility that the jury were misled to the prejudice of plaintiff in error by the marking of this form of verdict "give."

The judgment of the criminal court, in our opinion, should be affirmed.