PURITY MAID PRODUCTS COMPANY ET AL. *v.* AMERICAN BANK AND TRUST CO.

[No. 15,785. Filed May 10, 1938. Rehearing denied June 29, 1938. Transfer denied September 29, 1938.]

*Robert E. Bulleit, Elmer Q. Lockyear, Theodore Lockyear, R. Owen Williams,* and *Telford B. Orbison,* for appellants.

*Charles D. Kelso,* for appellee.

KIME, J.—This was an action by an amended complaint in one paragraph filed by appellee, seeking judgment against appellants upon certain promissory notes and for foreclosure of a certain mortgage executed by appellants in favor of appellee upon certain real estate and personal property, which mortgage was given to secure the payment of said notes.

The amended complaint alleged that the Department of Financial Institutions, by virtue of Chapter 40 of the Acts of 1933, had elected to prosecute this action in the name of the plaintiff American Bank and Trust Company; that the defendant Purity Maid Products Company, by its eleven promissory notes, numbered 140 to

150, promised to pay plaintiff $3,311.00; that at the time said notes were delivered to the plaintiff by the defendant Purity Maid Products Company, the other defendants had endorsed each of said notes; that each of said notes was for the sum of $301.00, bore interest at eight per cent after maturity and were all past due and unpaid at the time of the bringing of this action; that the defendant, Purity Maid Products Company, to secure the payment of said notes, executed to plaintiff its mortgage on certain real estate and personal property; that there was due and unpaid on said notes $3,435.00, plus attorneys' fees of $500.00 and there was a prayer that said mortgage be foreclosed and the real estate sold to pay plaintiff's judgment. Copies of the respective notes and mortgage were made exhibits to the complaint.

To this amended complaint defendants separately and severally answered in three paragraphs: (1) general denial; (2) "The defendants, for separate and several amended second paragraph of answer to the plaintiff's amended complaint herein, aver:

"That on the 28th day of March, 1921, and at the time the notes and mortgage sued on in the plaintiff's amended complaint herein, were executed, the defendant Purity Maid Products Company was indebted to the plaintiff American Bank and Trust Company in the sum of $30,000 for moneys which had theretofore and during the months of December, 1920, and January, February, March, 1921, been advanced by said Bank to these defendants.

"That said sum of money was advanced by said Bank for use and was used by these defendants in the purchase of real estate located at the northeast corner of Twelfth and Market Streets in the City of New Albany, Indiana, and in remodeling and building additions to the improvements located thereon, and in equiping the

creamery plant located thereon, and paying other indebtedness of the defendants in connection with said creamery plant.

"That said sum of money was advanced by said Bank as aforesaid under an oral agreement between the said Bank and the defendants Irvin Scharf and Carl H. Thromarshaus, made between them and said Bank, during the month of December, 1920, and the exact date of which these defendants can not state, and in which agreement said Bank agreed to advance money for the aforesaid purposes from time to time as required, with the further agreement that any and all sums of money so advanced should be evidence by a series of notes amortized over a period of time to be secured by a lien on the property so purchased and improved, and the parties further agreed that interest should be charged on the moneys so advanced at the rate of a fraction over 4% per annum.

"That no notes or other evidences of indebtedness were executed by any of the defendants evidencing the moneys so advanced, as aforesaid, until on or about the 28th day of March, 1921, at which time said bank prepared and tendered to these defendants for execution a series of notes 150 in number, each for the principal sum of $301.00, one maturing on the 28th day of each succeeding month until all had matured, and which said notes said Bank represented to these defendants were executed in accordance with said verbal agreement. Whereupon these defendants executed said notes, under the belief that they were prepared in accordance with said verbal understanding.

"That since the principal amount of such indebtedness and interest to accrue thereon on the unpaid portions thereof from time to time was amortized in said notes over a period of 150 months, the calculations of the amounts which should be paid each month in order to

pay off such indebtedness, together with the interest on the amount remaining due and unpaid from time to time, involved a long series of mathematical calculations, and that these defendants relying upon the promise and agreement of said Bank to calculate into said notes interest at the rate of a fraction over 4% per annum as promised and agreed as aforesaid, and believing at the time of the execution of said notes that interest on the unpaid balances had been calculated at a rate of a fraction over 4% per annum, executed said notes without making the calculations necessary to determine whether the amount of the principal of said notes represented the money actually furnished by said Bank with interest at the rate agreed upon in said verbal agreement.

"That within a week or ten days after the execution of said notes aforesaid, the exact date of which these defendants can not now state, these defendants discovered for the first time that interest had been calculated and included in said notes at a rate of approximately 8% per annum, instead of a fraction over four per cent per annum, as had theretofore been agreed upon between the parties, and immediately called the attention of said Bank to the discrepancy; that thereupon said Bank represented to these defendants that ordinarily and in case of a loan of the character involved, the lending bank would require the borrower to borrow approximately double the amount of money required and leave approximately one-half the sum so borrowed on deposit, and that the agreement to charge interest at the rate of a little over a fraction over four per cent per annum, was predicated upon such an arrangement, and that since these defendants were not being required to borrow more money than actually required and were not being required to leave any money on deposit with

said bank, interest had been calculated at the rate included in the series of notes.

"That a dispute arose thereupon, between these defendants and said Bank about the terms and conditions of said loan, with respect to the rate of interest that should be charged thereon, and that in order to settle said dispute said Bank and these defendants then and there mutually agreed that if these defendants would pay such portion of the series of notes so executed by them, as would repay said bank the principal sum of $30,000 aforesaid, together with interest on the amount remaining from time to time unpaid, at the rate of 6% per annum said Bank would accept such payments in full and complete satisfaction of said indebtedness, and in settlement of said dispute surrender the remaining notes and satisfy the mortgage executed to secure the same, and that these defendants thereupon then and there agreed to pay said sum of $30,000 together with interest at the rate of 6% per annum on the amount remaining from time to time, until said indebtedness with interest thereon, should be paid in full, by paying such portion of said notes aforesaid so executed by these defendants as aforesaid as would result in the payment of such principal sum and such interest.

"That to secure the performance of said oral agreement said Bank, with the consent of these defendants, retained all the notes so executed by these defendants as aforesaid.

"That pursuant to the terms of said oral agreement after the execution of the notes sued on as aforesaid, these defendants have paid to said Bank an amount equal to more than the principal sum of $30,000 so advanced to and borrowed by them as aforesaid, together with interest on the amounts remaining from time to time when paid at the rate of 6% per annum as agreed upon between them and said Bank as afore-

said, and in accordance with the verbal agreement made between them and the Bank as aforesaid, to settle the dispute hereinbefore set out.

"That said payments were made promptly and pursuant to the terms of said oral agreement and that it was mutually agreed that these defendants should pay and that the said Bank receive the amount so paid by them as aforesaid in full satisfaction of the notes sued on in the plaintiff's complaint and in settlement of the dispute between said Bank and these defendants hereinbefore set out.

"That the mortgage sued on in the plaintiff's amended complaint is the mortgage executed by the defendants to secure the payment of said indebtedness and that the indebtedness represented by said notes has been fully paid and discharged as aforesaid"; and (3) other affirmative matter.

The defendant Purity Maid Products Company also filed a cross-complaint alleging approximately the same matters as contained in the amended second paragraph of answer.

The plaintiff filed its separate demurrers to the amended second paragraph of answer, the third paragraph of answer and the cross-complaint heretofore mentioned. These demurrers were each sustained.

Trial was had to the court on the issues formed by the amended complaint and the answer thereto in general denial, who found for the plaintiff and judgment was entered against the defendants for the sum of $4,392.96 and costs and the mortgage was foreclosed.

Defendants' separate and several motion for new trial on the grounds that the decision of the court is not sustained by sufficient evidence and is contrary to law, was overruled and this appeal followed, the errors assigned being that the court erred in (1) sustaining the demurrer to the separate and several amended sec-

ond paragraph of answer to the amended complaint, (2) sustaining the demurrer to the cross-complaint of Purity Maid Products Company, (3) sustaining the demurrer to the separate and several third paragraph of answer to the amended complaint, and (4) overruling appellants' motion for a new trial.

Neither the first oral agreement made during the month of December, 1920, nor the notes predicated thereon are questioned by the amended second paragraph of answer, but such answer is based upon a second oral agreement made in March, 1921, by the appellants and appellee, which was after the execution of the notes herein.

Appellants contend that the second oral agreement was sufficient to and did vary the terms of the notes herein and for that reason the court erred in sustaining appellee's demurrer to appellants' amended second paragraph of answer, while the appellee says that such oral agreement was of no avail (a) since the terms of a written contract can not be varied by an oral agreement, (b) since the contract was for a period of over a year the statute of frauds provides that such contract should have been in writing, and (c) that there was no consideration for the second oral agreement.

As to appellee's contention that this second oral agreement is of no avail since it was for a period of over a year and therefore within the statute of frauds and should have been in writing, §33-101 Burns 1933, being §8363 Baldwin's 1934 and Acts 1852, §1, ch. 42, provides "When contracts must be in writing: . . . No action shall be brought in any of the following cases: Fifth. Upon any agreement that is not to be performed within one year from the making thereof." In the case at bar, although the notes were payable one each month until paid yet all of said notes, if appellants so desired, could have been paid within a

year from the date of the second oral agreement and there is no express stipulation by the parties that this agreement should not be performed within a year. In such a case as this "Where no time is fixed for the performance of the contract, or where it is to be performed by a certain day (not precluding the right to perform sooner), or where the performance depends upon a contingency which may or may not happen within a year, the contract is not within the statute." *Wilson* v. *Ray* (1859), 13 Ind. 1; *Wiggins, Admr.* v. *Keizer* (1855), 6 Ind. 252; *Marley* v. *Noblett* (1873), 42 Ind. 85; *Hinkle* v. *Fisher* (1885), 104 Ind. 84, 3 N. E. 624; *City of Decatur* v. *McKean* (1906), 167 Ind. 249, 78 N. E. 982; *Timmonds* v. *Taylor* (1911), 48 Ind. App. 531, 96 N. E. 231; *Freas* v. *Custer* (1929), 201 Ind. 159, 166 N. E. 434.

Another reason why the second oral agreement is outside of the statute of frauds, and therefore need not have been in writing to vary the terms of the written contract, is that it appears from the amended second paragraph of answer that there had been a performance of all the terms and conditions of said oral agreement so far as appellants were supposed to perform, that is, appellants paid the sum of $30,000.00, which they borrowed plus six per cent interest thereon until said indebtedness with interest thereon had been paid, being all they were supposed to do under said oral agreement.

When an oral agreement has been so far complied with by one side so as to cause non-compliance by the other side to operate as a fraud on the compliant, the statute of frauds does not apply. *Wulschner* v. *Ward* (1888), 115 Ind. 219, 17 N. E. 273; *Shank* v. *Kuhn* (1920), 74 Ind. App. 264, 128 N. E. 775.

By said second oral agreement appellee agreed to vary the terms of the written contract and while the

general rule is that a parol agreement will not vary the terms of a written agreement, we must not lose sight of the fact that here it is not the parol agreement alone but the acts under it that affects the right of appellee to enforce the written agreement. *Dickerson* v. *The Board of Com. of Ripley County* (1855), 6 Ind. 128; *Coyner* v. *Lunde* (1858), 10 Ind. 282; *Straughan* v. *The Indianapolis & St. L. Ry. Co.* (1871), 38 Ind. 185; *Curran* v. *Curran, Admr.* (1872), 40 Ind. 473; *Owens* v. *Lewis* (1874), 46 Ind. 488; *Gagnon* v. *Baden-Lick, etc., Springs Co.* (1914), 56 Ind. App. 407, 105 N. E. 512.

A written agreement may be changed by a subsequent one orally made, upon a sufficient consideration. Such subsequent agreement may vary any of the terms of the written agreement or may waive or discharge it altogether. *Robinson* v. *Horner* (1911), 176 Ind. 226, 95 N. E. 561. The written agreement herein is the notes—the mortgage is not the debt but only an incident thereof; and if the notes were modified, it follows that the mortgage must have been modified to the same extend. *McCoun* v. *Shipman* (1921), 75 Ind. App. 212, 128 N. E. 683.

By his demurrer to the answer under consideration the appellee asserted that the second oral agreement was not based upon a valuable consideration. The said answer plainly shows that a dispute arose between the appellee and appellants with reference to the rate of interest and in settlement of such dispute the second oral agreement, the terms of which modified the written contract, as to the interest, was made.

"The settlement of a bona fide dispute or a doubtful claim, if made fairly and in good faith, is a sufficient consideration for a compromise based thereon." 12 C. J. 324, §17.

". . . it is a familiar principle of law that the com-

promise of a matter in dispute is a sufficient consideration to support a contract, when the same is entered into in the absence of fraud." *Fender, Admr.* v. *Phillips, Admr.* (1915), 59 Ind. App. 85, 92, 108 N. E. 971.

When the dispute herein arose appellant could have litigated to set aside the notes and declare them void for the reason that the rate of interest was about eight per cent when it was agreed that it should only be a 'fraction over four per cent but in order to avoid the trouble and expense of litigation the dispute was compromised by the second oral agreement. It has been held frequently that "the prevention of litigation is not only a sufficient but a highly favored consideration and no investigation into the character or value of the different claims submitted will be entered into for the purpose of setting aside a compromise, it being sufficient if the parties entering into the compromise thought at the time there was a question between them." *Thompson* v. *Nelson* (1867), 28 Ind. 431; *Bement* v. *May* (1893), 135 Ind. 664, 34 N. E. 327, 35 N. E. 387; *Jones* v. *Mayne* (1900), 154 Ind. 400, 55 N. E. 956; *McCoun* v. *Shipman, supra.*

For the above reasons we must hold that the demurrer of the appellee to the amended second paragraph of answer was erroneously sustained, therefore, the judgment herein is reversed with instructions to overrule appellee's demurrer to the amended second paragraph of answer. The same ruling applies to the demurrer to the cross-complaint. Since the question as to the third paragraph of answer will not likely arise upon retrial, there is no necessity to discuss it.

Laymon, C. J., dissents.